**BONDS v. LLOYD et al.**

No. 4602.

Court of Civil Appeals of Texas.
Eighth District.

Dec. 8, 1948.

Rehearing Denied Jan. 5, 1949.

Marvin B. Simpson and Sam Billingsley, both of Fort Worth, for appellant.

Paul T. McMahon and J. W. Madden, Jr. both of Dallas, for appellees.

McGILL, Justice.

Appellee, Mrs. Georgia B. Lloyd, is the former wife of appellant. She brought this suit to recover from appellant the value of 5 shares of stock in the Bonds & Dillard Drilling Corporation, alleged to have been of the actual value of $21,562.50 when it was wrongfully appropriated by appellant. She obtained a divorce from appellant in August 1938. The basis of her cause of action is that prior to the divorce appellant proposed to her that they donate ten shares of their 300 shares of stock in said corporation which was community property, to Fred Addison, in consideration of his long and faithful service as an employee of the corporation; that she agreed to such gift and believed it had been made; that at the time of the divorce appellant represented to her that they were the owners of only 290 shares of said stock, 10 shares having been given to Addison; that she believed such representations, and relying upon them agreed to an equal division of the 290 shares in a property settlement which was incorporated in the divorce decree; that such representations were false in that the 10 shares of stock, although caused to be issued to Fred Addison by appellant, had never in good faith been transferred and delivered to him, and at all times she and appellant were the owners thereof; that thereafter appellant wrongfully appropriated the 10

shares of stock to his own use or the use of others. Appellant defended on the ground that pursuant to the agreement between him and his then wife he did in good faith transfer and deliver the 10 shares to Addison; that several months after the divorce he was establishing a trust fund for his son by a former marriage whom Addison and his wife had raised; that the Addisons desired to put the 10 shares in such trust fund and transferred the stock to him for that purpose; that the 10 shares were actually placed in such fund; that all transactions were bona fide transfers and part of the records of Bonds & Dillard Drilling Corporation to which appellee, Mrs. Lloyd, at all times had access. Trial was to a jury. On findings that prior to the property settlement and divorce appellant represented to Mrs. Lloyd that only 290 shares of stock were owned by them as community property, which representation was false, believed by Mrs. Lloyd and relied on by her in executing the property settlement and that the reasonable actual value of the stock on February 1, 1938 (the date it appeared to have been issued to Addison) was $2500.00 a share, the court rendered judgment in favor of appellees against appellant for $19,-812.50.

Two of appellant's points assert error in the court's action in sending to the jury room over defendant's objections for consideration by the jury during their deliberations, plaintiff's Exhibit No. 21, which consisted of excerpts of testimony of defendant, P. R. Bonds, given on a former trial.

Plaintiff introduced in evidence certificate No. 10 of Bonds & Dillard Drilling Corporation, dated the 1st day of February, 1938, certifying that Fred Addison was the owner of 9 shares of the capital stock of the corporation. On this certificate there was an endorsement transferring to P. R. Bonds the stock represented by the certificate. This endorsement was not dated. It was signed by Fred Addison. On this trial Bonds, on cross-examination, had testified that Addison signed this endorsement when he (Bonds) was setting up the trust fund for his son. For the purpose of impeaching him and to show that Addison signed the endorsement on the day the certificate was

issued or a day or two thereafter, plaintiff used certain excerpts from a transcript of the court reporter's notes of Bonds' testimony taken on a former trial, which tended to support her theory. Plaintiff's Exhibit 21 is a portion of such excerpts which were read and offered in evidence. We here reproduce it:

"Plaintiff's Exhibit 21.

"Q. On the very day that this certificate was issued Fred Addison signed his name down here at the bottom, didn't he? A. His name is on the bottom.

"Q. I say he signed that on the very day it was issued, didn't he? A. Well, I don't know. I guess he did. I don't know.

"Q. You know he did, don't you? A. No, I don't. It might have been in the office a day or two.

"Q. Well, this share of stock right here, this certificate never did leave the office of Bonds & Dillard Drilling Company, did it? A. No, sir, not that I know of.

"Q. It was kept right there wasn't it? A. Yes, sir.

"Q. And retained by you from the very date of its issuance, wasn't it; kept in the office. A. Well, it was in the office.

"Q. After having been signed by Fred Addison, that is right, isn't it? A. Yes, I figure he transferred it."

When the jury retired to consider their verdict this exhibit had not been detached from the transcript of testimony taken at the former trial. This transcript consisted of some 215 pages. It was not sent out with the jury when they retired.

After the jury retired the following occurred, as shown by bill of exception prepared by the Court: The court through a deputy thereof received in open court the following written request from the jury:

"Did Mr. Bonds testify that Certificate No. 10 for nine shares of stock was transferred from Mr. Addisohn to Mr. Bonds either on the same day the Certificate was written, or a day or two later? If so, may we have that portion of the testimony? (Signed) H. E. Brocker, Jr., Foreman."

Thereupon the jury were returned to the court room and defendant's counsel in their

presence requested the court to inform them that they had a right to have the whole of Mr. Bonds' testimony read to them; the court stated that he did not know whether or not he had that right, examined the Texas Rules of Civil Procedure and read to the jury the following portion of Rule 287;

"If the jury disagree as to the statement of any witness, they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness' testimony on the point in dispute * * *"

and then instructed the jury to retire to the jury room and advise him in writing as to the part of any witness' testimony in dispute, and he would have read to them from the court reporter's notes such part of the witness' testimony and advised the jury that any part of the testimony they desired would be reproduced for them. Thereupon the jury retired. Plaintiff's counsel then "independent of any request made by the jury" moved the court to send plaintiff's Exhibit No. 21 to the jury. The defendant objected as follows:

"We now object and except because the exhibit which Your Honor is sending to the jury is a part of a whole, of an exhibit that was introduced for impeachment purposes; and because it was a part of the witness Bonds' testimony on a former trial of this case in another court and because it is not the testimony called for by the jury in their note, in that the jury in the note presented to the Court on this date stated: 'Did Mr. Bonds testify that Certificate No. 10 for 9 shares of stock was transferred from Mr. Addison to Mr. Bonds either on the same day the certificate was written or a day or two later? If so, may we have that portion of the testimony? Signed H. E. Brocker, Jr.'

"Now, we say that it is plainly shown that the testimony they refer to is the testimony of Mr. Bonds with reference to the transfer of the certificate by Mr. Addison back to Mr. Bonds February the 1st or 2nd, 1939. And we further say that the record will show that Mr. Bonds testified that the certificate was signed on that date or a day or two later, and that it is not the record, and we object to the Court sending in the exhib-

it No. 21 because it is not responsive to the jury's request and is prejudicial to this defendant's rights; and because the Court, by doing so, is acting upon the weight of the evidence in that he is singling out certain portions of the testimony introduced for impeachment purposes and not the real testimony upon the trial of this case.

"And defendant further objects because the Court has heretofore called the jury out and asked them—and gave them instructions to let him know what they wanted and returned them to the jury room; and now to send this Exhibit No. 21 into the jury would be very prejudicial to the defendant's rights in that it would lead the jury to believe that that was all the testimony of the defendant Bonds on that point or on any point."

The court overruled the objection, detached plaintiff's Exhibit No. 21 from the transcript and sent it to the jury, to which action defendant excepted.

 The sending of plaintiff's Exhibit No. 21 to the jury room while the jury was deliberating on its verdict was a violation of Rule 281, T.R.C.P. The exhibit did not constitute "written evidence" within the purview of the rule. It was a portion of the testimony of defendant given on a former trial as evidenced by the testimony of the court reporter that he took stenographic notes of such testimony and correctly transcribed them, and signed a certificate to that effect; "in fact, it in effect amounts to a deposition which may be taken upon oral examination." American Natl. Bank v. Haggerton, Tex.Civ.App., 250 S.W. 279, loc. cit. 284 (6). Every reason on which that portion of Rule 281 which prohibits the jury from taking such depositions with them in their retirement is founded is just as cogent as to this exhibit.

 We are also of the opinion that the error of the court in sending this exhibit to the jury under the circumstances above outlined amounted to such a denial of appellant's rights as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment, and necessitates a reversal within the purview of Rule 434, T.R.C.P. We do not hold

that had the court on his own motion or on motion of plaintiff sent this exhibit with the jury when they first retired, such error would have necessitated a reversal. The jury's question clearly indicates that they were giving a great deal of consideration to the question of whether or not the stock certificate was transferred by Addison to Bonds on the day it was written or a day or two later in determining whether the entire transaction was simulated or a sham, as claimed by plaintiff. On its face the exhibit does not purport to be a transcript of Bonds' testimony on a former trial. It had not been detached from the 215 page transcript when it was introduced in evidence. Other excerpts from such transcript had been used on cross-examination of Bonds. The jury's question clearly indicates that they were interested in all of Bonds' testimony which would throw any light on the question as to when Addison made the transfer. The exhibit singled out and emphasized the testimony of the court reporter as to what a portion of Bonds' testimony on this question was on a former trial, without even indicating that such testimony was given on a former trial. Its harmful effect, we think, is apparent. Those portions of appellant's objections to effect that the court by sending the exhibit to the jury room was "singling out certain portions of the testimony introduced for impeachment purposes and not the real testimony on the trial of this case" and that "it would lead the jury to believe that that was all the testimony of defendant Bonds on that point" clearly pointed out the harmful effect the court's action in sending the exhibit to the jury room would have. It will not do to say that the harmful effect was removed because plaintiff's motion was made and the court's action in granting it was taken "independent of any request made by the jury and not in response thereto." Under the circumstances it is apparent that the jury must have considered that the exhibit was sent to them in response to their request.

In view of another trial it is necessary to mention appellant's other points. The 3rd, 4th and 5th points complain of the court's refusal to permit defendant Bonds to answer questions propounded to him by his counsel, inquiring whether in transferring the stock to Addison (1) he did so for the purpose of cheating or defrauding the then Mrs. Bonds, (2) whether he made the transfer in good faith and as an actual transfer of the stock, and (3) whether he made the transfer for the purpose of cheating or defrauding Mrs. Bonds of her community interest in the estate or any part of it. Plaintiff alleged: "That defendant not only never did make a bona fide delivery of said 10 shares of stock to the said Addison, but that defendant never intended to make a bona fide delivery of same."

Her theory was that the purported transfer to Addison was simulated, was a sham, and done by defendant for the purpose of defrauding her. Under this theory and this pleading certainly defendant's motive or intention in having the stock transferred to Addison was a subject of inquiry, Smith v. Lander, Tex.Civ.App., 106 S.W. 703, loc. cit 705, and authorities there cited, Wr. Den., therefore defendant should have been permitted to testify as to his intentions in the matter. The court erred in sustaining plaintiff's objections to the questions propounded.

The last point is that the court erred in overruling defendant's motion for a peremptory instruction. It would serve no useful purpose to discuss the evidence on which appellee relies to warrant the court's submission of the case to the jury. In view of another trial we doubt the propriety of our doing so. Suffice it to say that we have carefully read and considered such evidence and have concluded that the court did not err in overruling defendant's motion for an instructed verdict.

For the error indicated, the judgment is reversed and the cause remanded.

Reversed and remanded.