SKILLERN & SONS, INC., Petitioner,

v.

Florence ROSEN, Respondent.

No. A–8441.

Supreme Court of Texas.

July 25, 1962.

Strasburger, Price, Kelton, Miller & Martin, Dallas, for petitioner.

Woodruff & Hill, Dallas, for respondent.

HAMILTON, Justice.

The opinion delivered on April 25, 1962, is withdrawn and the following is substituted therefor:

This is an action for damages brought by respondent, Florence Rosen, against petitioner Skillern & Sons, Inc., alleging that she slipped and fell in petitioner's drugstore and was injured. Trial was to a jury, and on the jury's verdict judgment was entered for petitioner. On appeal to the Court of Civil Appeals that court reversed and remanded the case. 346 S.W. 2d 352. Petitioner is here complaining that the Court of Civil Appeals was in error in holding that the trial court had erred in refusing to allow hearsay and self-serving declarations of the respondent to be admitted in evidence. The Court of Civil Appeals held that such declarations were admissible on two theories, one on res gestae and the other on the theory of "recent fabrication". In our opinion the declarations were not admissible. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

In answer to the suit for damages based on negligence, petitioner filed a general denial and in addition to alleging several acts of contributory negligence on the part of the respondent, especially pleaded that she did not fall in Skillern's drugstore. The first special issue in the court's charge was:

"Do you find from a preponderance of the evidence that on the occasion in question Florence Rosen fell on the floor in the Skillern drugstore?"

The jury answered this question "No". The court instructed the jury that if it had answered issue No. 1 "No", then it need not answer any other issue in the charge. It was on this verdict that the trial court rendered its judgment for petitioner.

Florence Rosen testified that on the afternoon of December 30, 1958, it was snowing, sleeting and raining, and that the streets and sidewalks of downtown Dallas were covered with snow, sleet and slush. She had brought her car into town that day and had promised to pick up her sister, Mrs. Ira Lewis, at the Doctors Building about 5 o'clock. Owing to the bad weather she decided not to drive her car home, but to try to catch a taxicab or bus. This she had

been unable to do after waiting some forty-five minutes or an hour. Realizing that she was late, she testified she went into the Skillern drugstore to telephone her sister that she would be late, and to get a cup of coffee. After entering the drugstore she noticed a puddle of water to her left and near the cigar counter and the cash register. She veered around the puddle of water some three or four feet from it. As she did so, her left foot slipped and she fell on her elbow and on her back. As she lay on her back she noticed some droplets of water in the vicinity of where she was lying. Two men came and helped her up. She did not realize that she was hurt, but she was embarrassed and immediately left the drugstore without reporting to any employee of the drugstore that she had fallen. She walked to where her car was parked and drove to the Doctors Building to pick up her sister about 6:30. She parked the car and went in the building to get her sister. At that time her elbow was paining her considerably. She drove her sister to the apartment house, some five miles distant, where they lived together. Her physician, Dr. Bywaters, was called for an appointment and a neighbor in the apartment building, a Mr. Wenger, was called to drive with them to Baylor Hospital. She had difficulty in getting her jacket off on account of the pain in her elbow and on account of a zipper that would not work. Mr. Wenger came in and assisted Florence Rosen in removing her jacket and drove the sisters to Baylor Hospital, where respondent received emergency treatment from Dr. Bywaters. Not being able to get a room in that hospital, they went to Gaston Hospital, where she saw Dr. Bywaters again.

After respondent testified, she called as her first witness, Dr. Bywaters, who testified that he saw respondent first on the evening of December 30, 1958, in the Baylor Hospital emergency department. When asked what history she gave him at that time he answered:

"Well, she said she had fallen in the drugstore inside that building; now I have it recorded that she passed through a revolving door and fell on a wet place on the floor."

He diagnosed the injury as a fractured elbow which required an operation, which he performed the next day. She remained in the hospital on this occasion until January 22, 1959.

Respondent also presented as witnesses three of the employees of Skillern's drugstore who were on duty the day of the alleged accident. They were Mr. Edward D. Fuhrman, Nancy Carol Hardy and Stanford Harris, Jr. Mr. Fuhrman testified that he was pharmacist in the drugstore and was assistant manager. He was in charge of the drugstore when the manager, Mr. Allison, was not there, and said at the time of the alleged accident Mr. Allison was not in the store. He further testified that from where he was working at the time of the alleged accident he was not in position to see Miss Rosen fall, if she did. No one reported to him that anybody fell in the store on that evening.

Miss Hardy testified that she was cashier and sold cigars and cigarettes. She was on duty at the time of the alleged accident. She was behind the counter just opposite the place where Florence Rosen said that she fell; she testified she did not see Miss Rosen fall and in effect said she would have seen the fall had it happened.

Stanford Harris, Jr., testified that he was porter in the drugstore and usually went home about 5:30 in the afternoon. He did not know about anybody falling in the store.

After the respondent rested, the defendant called Miss Edith B. Fisher to testify. She testified that she was an employee of Skillern's drugstore and was on duty the evening of December 30, 1958, at the time of the alleged accident. She worked in the cosmetics department, which was on the west side of the store opposite the cigar counter and cash register. She testified in effect that if Miss Rosen fell where she said she did, she could have seen her, but

she did not see her fall, and knew nothing about any such fall.

The records of Gaston Hospital were introduced by petitioner. Such records contained a history given by Florence Rosen and her sister, Mrs. Ira Lewis. Since it appears that the two of them went to the hospital together, the jury was entitled to conclude that the statements to the employee were made by Miss Rosen or by the sister in her presence. A part of such history reads:

"The patient slipped and fell at 5:30 p. m. while walking in the slushy snow in front of a local drugstore."

The same hospital records also show that she was discharged on January 22, 1959, and in the discharge summary there is this statement:

"Patient received injury by falling on floor of a store. Treated in emergency room at Baylor."

Respondent sought to introduce declarations made by respondent Florence Rosen to Mrs. Ira Lewis, the sister, Mr. Wenger, the neighbor in the apartment house, and Milton Angrist, respondent's employer, to the effect that she fell in Skillern's drugstore on the occasion in question, under the recent fabrication theory. Petitioner objected to the introduction of such testimony on the grounds that it was hearsay and self-serving. The sustaining of such objections was one ground on which the Court of Civil Appeals reversed the trial court.

Petitioner contends that the Court of Civil Appeals was in error because the prior consistent hearsay and self-serving statements of Florence Rosen, sought to be introduced, were not shown to have been made at a time when no motive or interest existed for the making of such statements.

■ This court has heretofore recognized the recent fabrication theory as an exception to the hearsay rule under certain situations. One situation is where a witness is sought to be impeached by the opposing party by the introduction of a prior statement of the witness inconsistent with his testimony at the trial. Aetna Insurance Co. v. Eastman, 95 Tex. 34, 64 S.W. 863. Another situation is where the opposing party seeks to impeach a witness by introducing testimony to the effect that the witness failed to speak at a time when he could have been reasonably expected to have done so. Houston & T. C. Ry. Co. v. Fox, 106 Tex. 317, 166 S.W. 693; Whitener v. Traders & General Ins. Co., 155 Tex. 461, 289 S. W.2d 233. In each of these situations it has been held that prior consistent statements, with certain limitations, may be introduced to counteract the inference that the witness may be telling an untruth at the trial.

■ One seeking to have hearsay declarations of a witness admitted as an exception to the general rule must clearly show that they are within the exception. It is said in the Aetna v. Eastman case, supra:

"The declarations offered in evidence in such cases are at best hearsay, and are inadmissible under the general rule; and we are of the opinion that, if the declarations are sought to be brought within the exception, the grounds which take it out of the rule ought clearly to appear."

The Supreme Court, speaking through Justice Gaines, in the Aetna v. Eastman case, supra, which we consider the leading case in Texas on the doctrine of recent fabrication, in clear and concise language laid down the rule and the reasons therefor under which prior consistent statements could be admitted. We quote:

"* * * (1) That, in the absence of evidence impeaching the credibility of a witness, such testimony is never admissible. Moody v. Gardner, 42 Tex. 414. (2) That whenever a witness is sought to be impeached by showing that he has made declarations inconsistent with the testimony given by him upon the trial, and the tendency of such im-

peaching evidence is to show that the testimony of the witness is, by reason of some motive existing at the time of the trial, or of some influence then operating upon him, fabricated, it is proper to admit evidence of his former declarations which corroborate his testimony, provided such declarations were made at a time when no such motive or influence existed. Lewy v. Fischl, 65 Tex. 311; Com. v. Jenkins, 10 Gray, 489; State v. Flint, 60 Vt. 304, 14 Atl. 178; Barkly v. Copeland, 74 Cal. 1, 15 Pac. 307. * * * At the time of the alleged declarations to Sweeton, did the plaintiff have a motive to misrepresent the fact stated by him? Sweeton testified that the declarations were made to him the day after the additional insurance was taken out. If at that time the plaintiff had not notified Magrill, the agent of the defendant company, that he had taken out the additional insurance, the policy sued upon was void. If he had so notified him, it was a valid and subsisting contract. Hence it was a self-serving declaration. Whether his interest in the matter induced him to make the statement or not is not, as we understand, a question to be inquired into by the court in determining the admissibility of the declaration. If the motive did not exist, the evidence is admissible. If it did, it should be excluded. * * * The reason that evidence of former declarations of a witness are admissible in such cases is that his testimony having been assailed on the ground that he had an interest to fabricate it, proof that he made statements consistent with that testimony at a time when he had no such interest tends to show that the testimony was not an afterthought and to rebut the theory of fabrication. As we think, according to the best authorities, this is the reason of the rule and suggests its appropriate limitations."

In 140 A.L.R., pp. 1 to 185, there is an exhaustive annotation on the case of Swea-

zey, Admr., etc. v. Valley Transport, Inc., by the Washington Supreme Court, 6 Wash. 2d 324, 107 P.2d 567, 111 P.2d 1010. That case holds that prior consistent statements are admissible to rebut a claim of recent fabrication of testimony only where such statements were made before the time when their ultimate effect and operation could be foreseen and no apparent motive for falsification existed. We quote from the opinion:

"Not every consistent statement made by a witness prior to the time his testimony is given is admissible to rebut the claim of recent fabrication. Unless the statement was made before the time when its ultimate effect and operation could be foreseen, it lacks any probative value to rebut the claim of recent fabrication. A statement made by a witness when its use to meet a claim of recent fabrication is foreseeable, has no relevancy as tending to prove the charge of recent fabrication is false. In Callihan v. Washington Water Power Co., supra, we stated [27 Wash. 154, 67 P. 700, 56 L.R.A. 772, 91 Am.St.Rep. 829]: 'Another exception to the rule is that, if a witness be impeached by proof of his having previously made statements that were in contradiction of evidence tending to show that the witness' account of the transaction was a fabrication of a recent date, it may be shown that he gave a similar account *before its effect and operation could be foreseen.*' (Italics ours.)"

The Court of Civil Appeals relied on the case of Houston & T. C. Ry. Co. v. Fox, 106 Tex. 317, 166 S.W. 693. Mrs. Fox testified in that case that she was severely injured just before alighting from the defendant company's train at Hearne. Her injuries resulted from a fall caused by a sudden jerking of the train. The defendant railroad company asserted that there was no accident or injuries to Mrs. Fox; that she had fabricated the whole matter. To sustain the charge evidence was offered to

prove that she did not complain to the railroad employees; she did not mention the fact of the accident to a family with whom she spent the night of the day on which she claimed to have been injured; she did not speak of the accident or injuries to her neighbors upon returning home; and she did not speak of her injuries to a doctor who examined her some time later for an insurance policy. The defendant's contention was that by remaining silent while claiming to be suffering from severe injuries the inference is that she did not have an accident and was not injured. Plaintiff countered with testimony that she did speak on these occasions about her accident and injuries by showing that she told her sister the next morning after the day of the accident of the time, place, circumstances and manner in which she was injured; also, she told her husband the same thing on returning home from her trip, and at about the time she was examined by the doctor for insurance she had told the insurance agent writing the insurance of her accident and injuries. The defendant objected to these declarations by Mrs. Fox, testified to by witnesses, on the ground that they were hearsay and self-serving. Concerning such testimony the court says:

" * * * To meet these charges she proved that at a time near to that mentioned she did speak of the fact of the accident to her, giving the time and place. By this evidence the issue of fabrication was met. But in addition to the fact of the injury her statements of circumstances of the accident, including the manner in which she was injured, were admitted over the objections of the defendant. The declarations which went beyond the facts of the accident were not relevant to the issue of fabrication, and should not have been admitted; they were self-serving declarations, therefore inadmissible. We will not undertake to analyze the evidence and state the portion not admissible, but the trial court at another hearing will confine the declarations of Mrs. Fox to such as tends to prove the occurrence of the accident and injury. It is difficult to be specific on this question, and much must be left to the trial judge."

It appears that the court was saying here that since on each occasion defendant sought to show that Mrs. Fox was silent about her accident and injuries at a time when she could have been reasonably expected to speak of them, it would be permissible for the plaintiff to show by other witnesses that she did speak of her accident and injuries at or near those particular times. However, the court said the testimony was not admissible because the statements went beyond the fact of the accident and injuries, indicating that the time, place, circumstances and manner in which she was injured were not admissible. The court in its opinion states specifically that it is not in conflict with the Aetna v. Eastman case, supra. We do not consider that this case holds contrary to the proposition that hearsay declarations are admissible to rebut recent fabrication only when made at a time when no motive for falsification existed.

Both the Eastman case and the Fox case, as well as other authorities on this subject generally, recognize the difficulty in applying the rule governing the admissibility of prior, consistent statements to rebut the issue of recent fabrication. Necessarily, much must be left to the discretion of the trial judge in applying the rule.

The trial judge, on the facts of this case, in passing upon the admissibility of the self-serving declarations of the respondent, could have determined that at the time they were made respondent had a motive for making such declarations for the purpose of offsetting the effects of the inference of recent fabrication raised by her failure to speak out at the time and place of her alleged injury. According to the Eastman case, supra, the court was not concerned with whether respondent in making the declarations was influenced by the motive.

The question was, did a motive exist at the time she made them. The trial court has wide discretion in applying the rule. We can not say that it abused its discretion in this case.

Respondent argues that the holding in this case conflicts with that of Texas Employers Insurance Association v. Thames, 236 S.W.2d 203 (Tex.Civ.App.1951, error refused) in so far as evidence of prior statements by respondent consistent with her testimony at the trial that she fell inside the Skillern Drugstore, was held to have been properly excluded. Respondent further contends that the effect of this holding will be to prevent litigants from relying on the doctrine of recent fabrications when they most need it, and to enable defense attorneys to create an inference without rebuttal that plaintiffs in personal injury cases such as this one have fabricated a case.

The Thames case was a workmen's compensation case in which plaintiff claimed general injuries and had testified to general injuries. The insurer introduced the testimony of two doctors who had treated plaintiff, both of whom testified that plaintiff had complained only of the specific injury to his arm, thus by implication charging plaintiff with fabricating the general injury claim. It was there held that under the rule of recent fabrication it was not error for the trial judge to admit, in rebuttal, portions of plaintiff's notice to the Industrial Accident Board of his injury and claim, notwithstanding the rule that these notices to the Board are hearsay if offered to prove the injury.

Respondent argues that in that case the prior consistent statement (notice of injury) was made at a time when the plaintiff had as much or more motive to fabricate than did Miss Rosen in the instant case.

We do not agree. The notice of injury and claim in the Thames case was prepared before any motive could have existed to rebut the issue of recent fabrica-tion raised by the failure of the plaintiff to tell the doctors of his general injury.

■ Another reason the trial court could have refused to admit the offered testimony is because it was not the defendant company that first offered the testimony which raised the inference of recent fabrication, but it was the plaintiff, Miss Rosen, who testified on direct examination that she left the drugstore without speaking to any employee therein about her fall or injury. Therefore, since she brought out the fact that she remained silent when she might reasonably have been expected to speak, she, in effect, set up her own defense of recent fabrication. She can not take advantage of the exception of the hearsay rule to rebut such inference which she raised by her own testimony on direct examination. It is our opinion that the trial court did not abuse its discretion in rejecting the testimony of Mrs. Lewis, Mr. Wenger and Mr. Angrist as to declarations made by the plaintiff under the recent fabrication rule.

■ The Court of Civil Appeals also held that the testimony of the witnesses Mrs. Ira Lewis and Kenneth Wenger that the plaintiff had told them about how she fell and injured herself in Skillern's drugstore was admissible as "res gestae". It appears that the statement made to Mrs. Ira Lewis was about forty-five minutes after the accident and to Mr. Wenger some time later. It was shown that Miss Rosen was suffering pain on both occasions, but there is nothing in the record to show that such statements were part of the transaction or the fall, or made under such circumstances as to raise a reasonable presumption that they were spontaneous utterances of facts created by or arising out of the accident itself. They were made in response to questions relating to a past event. If they are not in their nature a part of the fact, they do not constitute a part of the res gestae and are inadmissible, though closely related in point of time. Texas

Interurban Ry. Co. v. Hughes, (Tex.Com. App.) 53 S.W.2d 448; Pacific Mutual Life Ins. Co. of California v. Schlakzug, 143 Tex. 264, 183 S.W.2d 709.

We hold that the trial court did not abuse its discretion in excluding the testimony offered under the res gestae rule.

Respondent also complains of the action of the trial court in admitting into evidence records of Gaston Hospital which had to do with her admission into said hospital. We agree with the Court of Civil Appeals that such records were admissible.

The particular part of the record to which objection was made was a page out of the records which purported to be the history given an employee of the hospital by Mrs. Rosen and her sister. In this personal history record was the statement "The patient slipped yesterday at 5:30 while walking in the slushy snow in front of a local drugstore." The objections made were that the records were not properly proven up, and that they were hearsay.

Since Gaston Hospital was not shown to be a public hospital, the records, if admissible at all, would be made so by virtue of Article 3737e, Vernon's Ann.Civ. St., which provides for the admissibility of records if the judge finds:

"(a) It was made in the regular course of business;

"(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

"(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter."

Section 2 of said article further provides that such record may be proved by the custodian of the records even though he may not have personal knowledge as to the various items or contents of such memorandum or record.

Section 4 of said article assures that hospital records, properly proven up, can come within the purview of Article 3737e because "business" is defined as including "any and every kind of regular organized activity *whether conducted for profit or not.*" (Emphasis added.)

We think proper predicate was laid for the introduction of such records by the testimony of the custodian of the records, she having testified that they were made in the regular course of business of Gaston Hospital by an employee of the hospital at or near the time of the entry of the respondent into the hospital, and that it was customary for a record to be kept of the personal history of a patient entering the hospital.

Some employee or representative who either made the record or transmitted the information to another to record must have had *personal knowledge* of the act, event or condition in order for such record to be admissible under the business records exception to the hearsay rule. Sec. 1(b). For example, a doctor's statement as to whether a patient had or had not lacerations of the face, as to his pulse rate or blood pressure, and as to things that happen within the hospital are within the doctor's or nurse's personal knowledge. However, statements as to how an accident happened or where it happened, age, medical history, etc., do not become particularly trustworthy just because it is hospital routine to record them and they should be excluded. The legislature has provided for their exclusion by the requirement of *personal knowledge* by an employee or representative of the "business" (e. g., hospital). The latter examples are not within the personal knowledge of the hospital personnel. They have no personal knowledge of how or where the patient was injured.

**306**

However, some of such statements may be admissible on other grounds: as declarations against interest, spontaneous exclamations, dying declarations, and admissions of a party. McCormick & Ray, 2d Ed., § 1262, p. 135. The person in the hospital to whom such a statement is made may not have personal knowledge of the fact or facts contained in the statement, but if he has personal knowledge of the fact that the statement was made and if proper record thereof is made, the record would be admissible under the statute to prove that an admission of a party was made. The above statement by Miss Rosen is inconsistent with her testimony at the trial that she fell *inside* the drugstore, and is therefore an admission. McCormick & Ray, 2d Ed., § 1121, et seq. It appears that the question resolves itself down to this: if the hospital employee to whom Miss Rosen made the admission could have properly testified to the fact that she made such admission, then a proper record thereof would be admissible. On the question of admissibility of hospital records, see McCormick & Ray, 2d Ed., § 1262; Martinez v. Williams, Tex.Civ.App., 312 S.W. 2d 742, 749, no writ history; American General Insurance Co. v. Dennis, Tex.Civ. App., 280 S.W.2d 620, no writ history. See also Travis Life Insurance Co. v. Rodriguez, 326 S.W.2d 256, Tex.Civ.App., wherein Article 3737e, V.A.C.S. is construed, which construction was approved by this court by per curiam opinion in Rodriguez v. Travis Life Insurance Co., 160 Tex. 182, 328 S.W.2d 434.

We hold, as the Court of Civil Appeals did, that the trial court was not in error in admitting the part of the hospital record which contained Miss Rosen's statement that she fell in front of the drugstore.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

CALVERT, C. J., and WALKER, J., concur in the result.