R. A. LOGAN et ux., Appellants,

v.

William S. GRADY, Temporary Administrator of Estate of Elizabeth M. Grady, et al., Appellees.

No. 17318.

Court of Civil Appeals of Texas, Fort Worth.

June 2, 1972.

Rehearing Denied July 7, 1972.

Shannon, Gracey, Ratliff & Miller, William J. Fleniken, Jr., Miteff & Evans, and Meto Miteff, Fort Worth, for appellants.

Cantey, Hanger, Gooch, Cravens & Munn, and Howard G. Barker, Fort Worth, for appellee, William S. Grady.

Thompson, Knight, Simmons & Bullion, M. Lawrence Hicks, Jr., and David R. Noteware, Dallas, for appellee, Dorian King.

## OPINION

BREWSTER, Justice.

This is a suit for damages for personal injuries sustained by Mrs. Peggy Jean Logan, one of the plaintiffs, in a collision between her Pontiac automobile and a Dodge automobile being then driven by one of the defendants, Dorian King. William S. Grady, Temporary Administrator of the Estate of Elizabeth M. Grady, deceased, was also a defendant in the case. Elizabeth M. Grady was an occupant of the car being driven by Mrs. King. She was killed in the wreck. On receiving a jury verdict that found both drivers guilty of negligence that proximately caused the collision the trial court rendered judgment in favor of both defendants providing that plaintiffs take nothing by their suit. This is an appeal by the plaintiffs, Mr. and Mrs. R. A. Logan, from that decree.

When suit was instituted there was a question as to whether Dorian King or Elizabeth Grady was driving the Dodge at the time of the wreck. As the trial progressed the parties stipulated that Dorian King was the driver, so after that there was apparently no further effort to impose liability for the damages against the Elizabeth Grady Estate.

When this appeal was argued the appellants advised this Court that the trial court's judgment in favor of defendant, William S. Grady, as Temporary Administrator of the Estate of Elizabeth M. Grady, deceased, was correct and that that part of the decree should be affirmed.

We, therefore, affirm that part of the trial court's decree that provides that the plaintiffs take nothing by their suit as against William S. Grady, Temporary Administrator of the Estate of Elizabeth M. Grady, deceased.

Some undisputed facts in this case were: On April 8, 1966, Dorian King was driving a Dodge Dart south on Farm Road 718 in Wise County just south of the town of Newark; Elizabeth Grady also occupied that car at the time; Mrs. Peggy Jean Logan was the only occupant of her Pontiac car that approached Newark on this occasion on this same road going north; when she reached the crest of a hill Mrs. Logan started around a Ford auto that was traveling in front of her at a speed of from 50 to 55 miles per hour; she speeded up and passed around the Ford and got back into her correct lane of traffic and shortly thereafter the Dodge Dart coming from the other direction and going south went partly off onto the right shoulder and then cut diagonally across the Farm-to-Market Road No. 718; when the Dodge got into the northbound lane in which Mrs. Logan was traveling the Logan and King cars collided head-on resulting in the death of Mrs. Grady and serious

injuries to the other occupants of both cars.

A witness by the name of Charles Bills was on this occasion traveling on the same road behind Mrs. Logan and had caught up with Mrs. Logan's car and the Ford car and had followed them for about two miles before Mrs. Logan passed the Ford and he was a witness to the collision and to a part of the proceedings leading up to it.

The wreck occurred at approximately 5:45 P.M. and the two investigating officers arrived at the scene at about 6:45 P.M. They were highway patrolmen Norman Morton and one Sanders. They investigated the wreck and not very long after they arrived at the scene Officer Sanders gave the witness, Bills, a piece of paper and Bills, at Sander's request, in his own handwriting, wrote out a statement and signed it and it is identified in the evidence as defendant King's Exhibit No. 1, and such statement contains the following: "My location when accident happened was behind all 3 cars 200 yards. (Please tell in your own words just what you saw)

"I was traveling from Ft. Worth to Newark. I was at the top of the hill when the accident happened, traveling west. *The Ford was being passed by the Pontiac and the Pontiac did not seem to have enough room to pass the Ford safely because of the oncoming Dodge Dart. The Dart saw that the Pontiac did not have room to pass safely and slowed and pulled off onto the soft shoulder.* The Dart then turned sideways (front end towards the road). At this time the Pontiac was traveling very fast and was back in its *on* lane. The Dart then turned back straight and immediately the Pontiac and the Dart hit each other. The Ford barely got stopped. It stopped within 20 feet I believe. See sketches on back of sheet." (Emphasis ours.)

Patrolman Sanders did not testify in this case. Patrolman Morton did testify. He said that this statement was written out and signed by the witness, Bills, and given to Sanders by Bills, and made a part of the Highway Department's file relating to that wreck. Morton did not recall talking to Bills. He said the statement was a part of the official investigation file on this wreck.

The plaintiffs in their first three points urged on this appeal contend that: (1) The court erred in letting Patrolman Morton on examination by defense counsel testify as to the contents of the written statement that Bills wrote out for Officer Sanders because the testimony was hearsay, came under no exception to the hearsay rule and it contained conclusions and opinions; (2) the court erred in admitting in evidence this written statement of the witness, Bills, because it was hearsay, did not come under an exception to that rule, and contained opinions and conclusions; and (3) the court erred in denying plaintiffs' motion to withdraw from the evidence the Bills' statement and to strike from the evidence the testimony of Officer Morton concerning the contents of the Bills' statement, and to instruct the jury not to consider any of such matters for any purpose.

The defendants' (appellees') counsel persuaded the trial court to admit Bills' statement into evidence on the theory that such statement was a part of the official investigation file of the Texas Highway Department on this particular wreck and that it was therefore admissible as a business record by virtue of Art. 3737e, Vernon's Ann.Civ.St., and that it was also admissible as a part of the res gestae.

The plaintiffs objected to the statement being admitted on the grounds that it was hearsay.

There is no question but what this statement given by the witness, Bills, was pure hearsay evidence and that it was inadmissible unless it came under the res gestae exception to the hearsay rule or under the statutory exception to the hearsay rule that was created by Art. 3737e, V.A.C.S. Brown & Root v. Haddad, 142 Tex. 624, 180 S.W.2d 339 (1944); Allen v. Williams,

380 S.W.2d 718 (Waco, Tex.Civ.App., 1964, no writ hist.); and Ford Motor Company v. Mathis, 322 F.2d 267 (5th Cir. 1963).

■ Our courts hold that Art. 3737e, V.A.C.S., does create a valid exception to the hearsay rule. Travis Life Insurance Company v. Rodriguez, 326 S.W.2d 256 (Austin, Tex.Civ.App., 1959, affirmed in 160 Tex. 182, 328 S.W.2d 434).

The following is from Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298 (Tex.Sup., 1962) at page 301: "One seeking to have hearsay declarations of a witness admitted as an exception to the general rule must clearly show that they are within the exception. It is said in the Aetna v. Eastman case (Aetna Ins. Co. v. Eastman, 95 Tex. 34, 64 S.W. 863), supra:

" 'The declarations offered in evidence in such cases are at best hearsay, and are inadmissible under the general rule; and we are of the opinion that, if the declarations are sought to be brought within the exception, the grounds which take it out of the rule ought clearly to appear.' " See also Edwards v. Montgomery Ward & Co., 270 S.W.2d 432 (Beaumont, Tex.Civ.App., 1954, ref., n. r. e.).

■ Was the Bills' statement admissible as coming within the business record exception created by Art. 3737e?

■ The mere fact that the Bills' statement was a part of the Highway Department's file on the wreck did not make it admissible in evidence. In order for an exhibit to become admissible as a business record under Art. 3737e it is necessary that the one offering it lay a proper predicate for its admission by proving the existence of each of the essential elements set out in the statute. Unless each of the elements designated in the statute is present, then the statutory exception to the hearsay rule does not exist. Skillern & Sons, Inc. v. Rosen, supra; Trans-Cold Express, Inc. v. Hardin, 415 S.W.2d 431 (Austin, Tex.Civ.App., 1967, no writ hist.);

and Purvis v. Johnson, 430 S.W.2d 226 (San Antonio, Tex.Civ.App., 1968, no writ hist.).

Under Section 1(b) of Art. 3737e some employee or representative (of the Highway Department) who either made the record or transmitted the information therein contained to another to record must have had personal knowledge of the act, event or condition, reflected by such record, in order for such record to be admissible under the business records exception to the hearsay rule. See Skillern & Sons, Inc. v. Rosen, supra.

The necessary element created by Sec. 1(b) of the statute was clearly not present in this case.

We hold that the hearsay statement of the witness, Bills, was not admissible as being a business record under Art. 3737e because the essential element provided for by Sec. 1(b) of Art. 3737e was not proved to exist.

■ Was the Bills' statement admissible as being a part of the res gestae?

Did the defendants clearly show that the Bills' statement came within the res gestae exception to the hearsay rule, as they were required to do in order for it to become admissible under the rules laid down in the cases of Skillern & Sons, Inc. v. Rosen, supra, and Edwards v. Montgomery Ward & Co., supra?

We hold that they did not and that the Bills' statement was not admissible as being a part of the res gestae.

In Pacific Mut. Life Ins. Co. of California v. Schlakzug, 143 Tex. 264, 183 S.W. 2d 709 (1944) at page 712, the Supreme Court said the following: "It is said in some of the cases that the application of the res gestae rule addresses itself largely to the discretion of the trial court. In our opinion the question as to whether or not evidence is admissible as res gestae is a law question which an appellate court has

the same power to pass on that it has to pass on any other law question."

The same holding is made in Truck Insurance Exchange v. Michling, 364 S.W.2d 172 (Tex.Sup., 1963).

The following is from the opinion in Texas Interurban Ry. Co. v. Hughes, 53 S.W.2d 448 (Tex.Com.App., 1932) at page 451: "In determining whether evidence is admissible under the rule, each case must be tested by its peculiar facts, and, if upon a fair analysis a statement after the event does not appear to be a continuation of it, it cannot be res gestae, even though made near the time of the occurrence. Statements made must be either a part of the transaction or made under such circumstances as to raise a reasonable presumption that they are spontaneous utterances or facts created by or arising out of the transaction itself. If they are not in their nature a part of the fact, they do not constitute a part of the res gestae, and are inadmissible, though closely related in point of time. If this general rule announced by the authoritative decisions was not adhered to, it would be made the means of introducing indirect testimony in such a way as to make it injurious and prejudicial to litigants. . . ."

The only evidence offered during the entire trial that could in any way be considered as a predicate to the admission of this Bills' statement on the theory that it was a part of the res gestae is the following: Bills was a witness to the wreck; it occurred about 5:45 P.M. and Patrolmen Morton and Sanders did not arrive at the scene until about 6:45 P.M.; Patrolman Morton did not recall ever talking to Bills; all people that had been involved in the wreck had been removed from the scene by the time the officers arrived; when he saw the wreck, Bills stopped his car and went to help the people that were hurt; while he was still at the scene, Bills measured certain skid marks by stepping them off; not long after the patrolmen came to the scene and at a time more than an hour after the wreck, Patrolman Sanders handed Bills a blank piece of paper and told him to write out his version of how the wreck occurred; and pursuant to those instructions Bills wrote out the statement in question and signed it.

No evidence was offered to show whether or not Bills was excited or his emotional state at the time of making the statement.

We hold that this predicate was insufficient to make the Bills' statement admissible on the theory that it was a part of the res gestae. This statement was not made under such circumstances as to be a part of the transaction, nor was it made under such circumstances as to raise a reasonable presumption that its contents were spontaneous utterances or facts created by or arising out of the transaction itself.

Since the Bills' statement was inadmissible for the reasons stated, the court erred in admitting it into evidence. We therefore sustain each of the appellants' first three points which relate to the trial court's rulings relating to admitting before the jury the contents of the Bills' statement.

The next question to be determined is whether these errors were reversible under Rule 434, Texas Rules of Civil Procedure.

Rule 434 provides: ". . . no judgment shall be reversed on appeal . . . unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, . . . ."

The law applicable in making this determination is well stated in McCarty v. Gappelberg, 273 S.W.2d 943 (Fort Worth, Tex.Civ.App., 1954, ref., n. r. e.) at page 948, as follows:

"The meaning thereof has been held to cast upon a complaining party the burden of showing at least that the error probably resulted to his prejudice. Golden v. Odiorne, 1923, 112 Tex. 544, 249 S.W. 822, 823;

Texas Power & Light Co. v. Hering, 1949, 148 Tex. 350, 224 S.W.2d 191. The determination on this score by the appellate court will be made from the record as a whole. See the numerous cases cited in Texas Power & Light Co. v. Hering, supra, 224 S.W.2d at pages 192 and 193. While we are not convinced that but for the admission of the testimony in question the jury would have returned a different verdict by answering the issue differently, we must remember that the Rule's intent and purpose is not to require that the complaining party demonstrate that but for the error a different judgment would have resulted. Texas Power & Light Co. v. Hering, supra.

"It follows that the complaining party has shown reversible error when it is made to appear that he has been harmed by the error in that a finding of fact against him was controlled by, or probably resulted in whole or in part because of, the admission of the prejudicial testimony. Stated in different words: If the erroneously admitted testimony had such force as would be reasonably calculated to have effected the jury finding in question, the complaining party has suffered harm through the error and he is entitled to a reversal on appeal."

Here the jury returned a verdict finding that the defendant, King, committed negligent acts that proximately caused the collision and that the plaintiffs sustained $42,450.00 in damages. It was only because the jury found Mrs. Logan guilty of contributory negligence in two respects, each of which it found was a proximate cause of the collision, that judgment was rendered in favor of defendant, King, and against the plaintiff.

The jury found the plaintiff, Peggy Jean Logan, guilty of contributory negligence in violating Sec. 56 of Art. 6701d, V.A.C.S., in attempting to pass the Ford (Murphy) car on the occasion in question at a time when the left side of the center of the road she was on was not free of oncoming traffic for a sufficient distance ahead to permit the passing to be completed without interfering with the safe operation of the King car that was approaching from the opposite direction. The jury also found that Mrs. Logan was guilty of contributory negligence in failing to keep a proper lookout and that each of these acts of negligence was a proximate cause of the collision.

The witness, Bills, personally testified during the trial. He at that time testified that Mrs. Logan was following the Ford car being driven by Mrs. Murphy at a speed of from 50 to 55 miles per hour and that when the two cars reached the crest of the hill and a point where passing was permitted, Mrs. Logan pulled into her left hand lane on this two lane highway, accelerated the speed of her car, and passed in a short time around the Ford vehicle and got her car completely back into her proper lane for northbound traffic at a time when her car was still more than 200 feet South of the oncoming Dodge car being driven by defendant, King.

Contained in the erroneously admitted Bills' statement were the following statements: "The Ford was being passed by the Pontiac *and the Pontiac did not seem to have enough room to pass the Ford safely because of the oncoming Dodge Dart. The Dart saw that the Pontiac did not have room to pass safely and slowed and pulled off onto the soft shoulder.*" (Emphasis ours.)

The parts of the Bills' statement just referred to are pure conclusions of the witness and bear directly on the question of whether Mrs. Logan failed to keep a proper lookout and whether she attempted to pass the Murphy (Ford) car in violation of Sec. 56 of Art. 6701d, V.A.C.S. Bills did not personally testify to these conclusions when he appeared as a witness at the trial, because it would have been improper for him to have done so. Bills' testimony at the trial, when he there appeared as a witness, to the effect that Mrs. Logan completed her pass of the Ford and had driven her auto completely back into its proper

northbound lane at a time when she was still more than 200 feet away from the approaching Dodge, strongly supported the plaintiffs' contention that Mrs. Logan was keeping a proper lookout and that she did not make her pass around the Ford in violation of Sec. 56, Art. 6701d.

However, the conclusions of the witness, Bills, in his questioned statement, are strongly supportive of the findings made by the jury in finding Mrs. Logan guilty of the two acts of contributory negligence that the jury also found proximately caused the collision.

■ We are convinced that the erroneous admission of the Bills' statement was prejudicial to the plaintiffs' rights and that this fact is borne out by the record.

At the hearing of the motion for new trial two jurors, one being the foreman, testified. Special Issue No. 14 of the charge submitted the contributory negligence issue as to whether Mrs. Logan violated Sec. 56, Art. 6701d, in passing the Murphy (Ford) car on the occasion. One juror testified that the jury spent a long time in answering it. The foreman said they were on that issue for two hours. They had the inadmissible statement of Bills in the jury room with them because it was an exhibit. One juror said it appeared to them that Bills' statement was different from the testimony he gave from the witness stand and that they were confused about it. She said they wanted to request the court to let them hear Bills' oral testimony about the transaction. The foreman testified they were having a problem as to which way to answer the issue so he told the bailiff they needed more information about certain issues. The court bailiff then told the foreman that the jury already had in the jury room on the table (where the exhibits including Bills' statement was) everything that they needed.

Following this statement by the bailiff the jury then found Mrs. Logan guilty of contributory negligence in two respects,

which findings were strongly supported by the conclusions contained in the Bills' statement that the jury had on the exhibit table in the jury room with them during their deliberations.

We are convinced that the jury findings against Mrs. Logan of contributory negligence in the two respects and of proximate cause were controlled by and probably resulted in whole or in part because of the errors complained of in admitting in evidence for the jury's consideration the contents of the Bills' statement. We are convinced that the court's action in admitting the Bills' statement was reasonably calculated to have influenced the jury's answers to the contributory negligence issues and that the plaintiffs were prejudiced by the rulings that permitted the contents of the statement to go before the jury.

In addition to introducing the Bills' statement into evidence, counsel for appellee, King, was permitted, while cross-examining Patrolman Morton, to ask him questions as to the contents of the Bills' statement. This cross-examination was conducted over appellants' objection. The statement was not simply read into evidence, as is customarily done when an exhibit of that nature is introduced, but defense counsel proceeded to cross-examine the officer, sentence by sentence, as to the contents of the statement. In this manner this officer, Morton, who did not witness the wreck and who did not talk to the witness, Bills, was permitted to give his analysis of what Bills said in the statement.

The matter referred to in this last paragraph is the thing complained of in appellants' Point of Error No. 1.

■ Since the statement itself was not admissible, it follows that it was error to permit defense counsel to get into evidence the contents of such statement by way of cross-examining the witness, Morton, and in that manner unduly emphasizing the contents of the statement.

When the statement was introduced into evidence as an exhibit to be carried into the jury room with the jury during its deliberations, Bills' version therein contained, which was adverse to plaintiffs, as to whether Mrs. Logan violated Sec. 56 of Art. 6701d and as to whether she kept a proper lookout was further unduly emphasized over his oral testimony to the effect that Mrs. Logan completed her pass around the Ford at a time when she was still more than 200 feet south of the oncoming Dodge. This oral testimony was not at the jury's finger tips in the jury room, as was the written statement, at the time the bailiff told the jury that it had all it needed in order to answer the contributory negligence questions.

The two contributory negligence and proximate cause issues that were found by the jury against the plaintiffs were contained in Issues Nos. 14 and 15 (submitting violation of Sec. 56, Art. 6701d) and in Issues Nos. 18 and 19 (proper lookout).

Appellants' Points of Error Nos. 4 through 19, inclusive, except Point No. 8, attack the jury's findings made in answer to those four issues. The contentions of appellants are that there was both no evidence and insufficient evidence to warrant the submission of those issues.

In passing on these points we have reviewed the entire record. We overrule appellants' Points of Error Nos. 4 through 19, inclusive, and excepting Point No. 8, because we are convinced that there was some evidence and sufficient evidence to support the submission of such issues. The jury's answers to those issues were not against the great weight and preponderance of the evidence offered at the trial.

■ In appellants' 8th point they urge that the trial court erred in failing to inquire in Issue No. 14 whether Mrs. Logan returned her car to her right hand side of the road before coming within 100 feet of any vehicle approaching from the opposite direction.

Section 56, Art. 6701d, provides as follows:

"No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible, and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred (100) feet of any vehicle approaching from the opposite direction."

We overrule the point for the reason that it was undisputed in this case that Mrs. Logan returned her car to her right hand side of the road before she came within 100 feet of the approaching Dodge. It is not a jury's function to decide undisputed facts.

It is undisputed that Mrs. Logan's car left more than 100 feet of skid marks wholly within her right hand lane just before the collision. This, however, did not determine, under the facts of this case, whether Sec. 56, Art. 6701d, had been violated. It is not a prerequisite to a violation of that statute that the overtaking vehicle did not return to its proper lane until within 100 feet or less of an oncoming car.

In this particular case Issue No. 14 was not erroneous in the respect contended for by appellants.

■ In appellants' Point of Error No. 20 it is contended that the bailiff in charge of the jury was guilty of misconduct in failing to allow the jury to request the court to let them hear the testimony of the witness, Bills, after being requested by the foreman of the jury to do so.

Hereinabove we have set out what happened relative to this point. The undisputed evidence at the motion for new trial established conclusively that the jury bailiff violated Rules 283 and 285 of T.R.C.P., when he did not make the jury's wish as communicated to him known to the court and also when he instructed the jury that its members already had in the jury room all that it needed in order to answer Issue No. 14.

Rule 283 provides: *"The officer in charge of the jury shall not make* nor permit *any communication* to be made *to them, except to inquire if they have agreed upon a verdict, . . ."* (Emphasis ours.)

Rule 285 provides: *"The jury may communicate with the court by making their wish known to the officer* in charge, who shall inform the court, and they may then in open court, and through their foreman, communicate with the court, either verbally or in writting."* (Emphasis ours.)

We are convinced that the facts we have above outlined relative to this occurrence wherein the rules governing the conduct of trials were violated were of such a nature that they were reasonably calculated to have affected the jury's answers to the contributory negligence issues. We believe that the case of Bonds v. Lloyd, 218 S.W.2d 334 (Dallas, Tex.Civ.App., 1949, writ dism.) wherein a somewhat similar occurrence was involved, is authority for our holding that this transaction was a prejudicial error.

The appellees filed a cross-point contending that even if error was committed by the trial court in the respects claimed by appellants, such errors were harmless and this Court should still affirm the case because the trial court should have sustained the appellees' *motion for summary judgment* based on the grounds that plaintiffs' suit was barred by res judicata and Rule 97 (a).

Boiling appellees' contention down it is to the effect that the trial court erred in overruling appellees' motion for summary judgment. We overrule this cross-point.

The record reveals that appellee, King, did file a motion for summary judgment in the case and that on April 22, 1969, the court rendered a judgment overruling such motion, the order reciting that " . . . the Court, after reading the pleadings, the depositions, the affidavits on file herein . . . is of the opinion that the Motion for Summary Judgment . . . should be in all things denied."

Later, the case was tried on its merits and on August 11, 1971, the court rendered the final judgment in favor of appellees that is here being appealed from.

 It is now settled that where a point is based on an alleged error of the trial court in overruling a motion for summary judgment that it is not a point to be considered on an appeal from the judgment rendered following a trial of the merits of the case. Stewart v. Lomax, 395 S.W.2d 82 (Corpus Christi, Tex.Civ.App., 1965, ref., n. r. e.); Castilleja v. Camero, 402 S.W.2d 265 (Corpus Christi, Tex.Civ.App., 1966, affirmed at Tex., 414 S.W.2d 424); and Dyche v. Simmons, 264 S.W.2d 208 (Fort Worth, Tex.Civ.App., 1954, ref., n. r. e.).

Although the points relied on as grounds for appellees' motion for summary judgment were pleaded as a defense, the record does not show that this matter was ever presented to the trial court at any time during the trial on the merits for a ruling. No evidence whatever was offered during the trial on the merits in support of this defense.

There is an additional reason why we are required to overrule this cross-point. The judgment recited that the court in passing on the motion considered depositions that were on file in the case. These depositions are not a part of this appellate record.

 It is the law that with the appellate record in that state it is incomplete

and that an appellate court cannot tell from an incomplete record whether or not the court's decree rendered at the summary judgment hearing is correct. The appellate court in such cases will presume that the omitted deposition established the propriety of the trial court's ruling. Alexander v. Bank of American National Trust and Savings Association, 401 S.W.2d 688 (Waco, Tex.Civ.App., 1966, writ ref.) and G. C. Murphy Company v. Lack, 404 S.W. 2d 853 (Corpus Christi, Tex.Civ.App., 1966, ref., n. r. e.).

The judgment against the plaintiffs to the effect that they take nothing as against the defendant, William S. Grady, Temporary Administrator of the Estate of Elizabeth M. Grady, deceased, is affirmed.

The judgment against the plaintiffs to the effect that they take nothing as against the defendant, Dorian King, is reversed and that part of the case is remanded to the trial court for a new trial.

All costs are taxed against the appellee, Dorian King.