### DALTON et al. v. DALTON et al.   (No. 9561.)

(Court of Civil Appeals of Texas. Fort Worth. March 26, 1921. Rehearing Denied May 14, 1921.)

**1. Wills ⟨⟩324(2)—Issue of competency for jury.**

In suit to contest a will, issue of testatrix's competency *held* for the jury under the evidence.

**2. Evidence ⟨⟩322(5)—Testimony erroneous as importing rumor as to testatrix's incompetency.**

In proceeding to probate a will contested on account of incompetency, testimony of proponents' witness as to whether he had not heard of testatrix's being sick at a certain time and place, and whether he had not heard that her mind was gone at such time, *held* inadmissible, as importing into the case a mere rumor or report favorable to contestants.

**3. Evidence ⟨⟩314(2)—Testimony inadmissible, as injecting inference witness' mother thought something the matter with testatrix's mind.**

In suit to probate a will, contested for testatrix's incompetency, testimony by contestants' witness that during the year his attention had been attracted by his mother to the condition of testatrix's mind was inadmissible, as injecting the inference that the mother was of the opinion that something was the matter with testatrix's mind.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Proceeding to probate a will by C. A. Dalton and others against Ed Dalton and others. From judgment for contestants, proponents appeal. Reversed and remanded.

P. A. Martin, of Wichita Falls, Ritchie & Ranspot, of Mineral Wells, and R. B. Cousins, Jr., of Strawn, for appellants.

Penix, Miller, Perkins & Dean, of Mineral Wells, and P. C. Sanders, of Strawn, for appellees.

CONNER, C. J. This proceeding was instituted in the county court of Palo Pinto county by C. A. Dalton and others to probate the last will and testament of Mrs. Jane Volentine, deceased. It was alleged that the will had been lost or destroyed and could not be produced, but that it had been executed with all the customary and required statutory formalities, and that the testatrix at the time of its execution was of testamentary age and capacity. Further allegations were made, showing the jurisdiction of the court, but they need not be here noticed, as no question relating thereto is presented. Ed Dalton and others appeared and contested the probating of the will, denied its execution, but further alleged that, if made, the testatrix was not at the time of testamentary capacity, and that its execution had been secured by undue influence. Upon a hearing in the county court, the will was admitted to probate, but upon appeal to the district court the case was tried before a jury, to which was submitted a single special issue, to wit:

"At the time Mrs. Jane Volentine signed and executed the instrument of writing witnessed by J. L. Cunningham and A. C. Jordan, was her mind and memory sufficiently sound to enable her to know and understand what she was doing and the nature and effect of the act then being done by her?"

To which the jury answered, "No," and the court thereupon entered a judgment in favor of the contestants, denying the probating of the will, and the proponents, C. A. Dalton and others, have appealed.

That Mrs. Jane Volentine, in due form and manner, executed a will in September or October, 1912, is undisputed. The contested question is whether at the time of its execution she was of testamentary capacity. Appellants insist, under their first and second assignments of error, that the evidence shows without dispute that she was, while appellees contend with equal earnestness that the evidence is sufficient to support the jury's finding to the contrary.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] We have carefully examined the evidence, and feel unable to say that the court erred in submitting the issue to the jury, or that the verdict in answer to that issue is wholly unsupported by the evidence. It is true that the eminent counsel who prepared the will, the banker of the deceased, the witnesses to the will, and others, testified and gave it as their unhesitating opinion that at the time of the execution of the will Mrs. Volentine was sound of mind and of testamentary capacity. On the contrary, however, contestants and others testified to long-continued and intimate relations with the deceased, and gave opinions that she was not of sound mind, and in connection with such opinions stated numerous abnormal actions, words, and apparent delusions of the deceased, which, on the whole, as it seems to us, leaves the questions one of fact, proper for the determination of the jury. We cannot therefore reverse the judgment as urged on this issue.

[2] We are of the opinion, however, that the court erred, as set forth in the sixth, seventh, and eighth assignments of error. The question presented in the sixth and seventh assignments may be illustrated by the bill of exception taken during the examination of the witness J. L. Cunningham. J. L. Cunningham had testified as a witness in behalf of the proponents to the effect that he had long been the banker of Mrs. Jane Volentine; that at or about the time of the execution of the will in question she had consulted him with reference thereto, and that at the time of its execution, in his judgment, Mrs. Volentine was of entirely sound and disposing mind. The bill of exception thus reads, omitting formal parts:

"During the cross-examination of proponents witness J. L. Cunningham, counsel for contestants asked the witness whether he had not heard of the deceased Mrs. Jane Volentine's being sick at Charlie Dalton's in the summer of 1912, as to how long she has stayed there, and whether he had not heard that her mind was gone at that time. Counsel for proponents objected to the questions and answers of the witness thereto on the ground that counsel was assuming that said Jane Volentine had been ill at Charlie Dalton's at the time mentioned, and that her mind was then gone, and thereby indirectly permitted to so testify before the jury, on the ground that it was wholly immaterial whether the witness had heard such rumors or reports, if there were such, and on the further ground that if witness had heard such rumors or reports same would be purely hearsay and inadmissible, touching the mental condition of the deceased, and because highly prejudicial to the proponents. Which objections were by the court overruled, and the witness was permitted to testify, and did testify, in answer to said questions in substance that he heard of the deceased being insane at Charlie Dalton's in the summer of 1912, and that, concerning whether the deceased's mind was gone at said time, it might be that way, but witness could not be positive about it. To which action of the court overruling said objections and in admitting said testimony and to the action of the counsel in propounding the questions aforesaid proponents excepted at the time and here now tender this their bill of exception No. 2, and ask that same be approved, filed, and made a part of the record in this case."

From this bill of exception, it is apparent, we think, that the court erred in thus permitting a mere rumor or report, favorable to contestants, to be imported into the case. The words, actions, and appearance of Mrs. Volentine at the time of her sickness at Charlie Dalton's in the summer of 1912, if she was then and there sick, were perhaps admissible on the issue of whether she was then of sound mind, but, if so, they should be shown by witnesses, if any, who then observed her and knew of her actions, etc. But a mere report, founded thereon, that became extant in the community, and that may have been heard by Mr. Cunningham, was only an opinion of unidentified persons, not under oath, not shown to have knowledge of the facts, and as to the proponents purely hearsay.

[3] Of a like character is the error of the court in permitting the contestants on direct examination of their witness Hal Fletcher to prove by him that during the year 1911 "his attention had been attracted by witness' mother to the condition of Mrs. Volentine's mind at that time." The circumstances, if any, which prompted the mother of witness to call his attention to the condition of Mrs. Volentine's mind at the time he speaks of, were not before the jury, so far as called to our attention, and to inject into the case as evidence the inference that Hal Fletcher's mother was of the opinion that something was the matter with Mrs. Volentine's mind was wholly unwarranted. If the mother knew anything relevant to the issue, she should have been called and sworn as a witness, to the end that the jury and court might pass upon whether her conclusion was reasonable or otherwise. Hal Fletcher gave his opinion, but contestants were not entitled to have it reinforced by the ex parte declaration or action of his mother as against the objections of the proponents.

The errors last above indicated, we think, require a reversal of the judgment. While we have decided that the evidence of Mrs. Volentine's sanity at the time of the execution of her will cannot be said, under the evidence as submitted to us, to be wholly undisputed, yet the evidence relating to the issues is very sharply conflicting, if indeed it does not preponderate in favor of the proponents. In view of which, we think the errors above indicated were highly prejudicial to the proponents, and because of which, as stated, the judgment must be reversed.

Other assignments have been examined, but are not of importance, and are overruled without discussion.

Judgment reversed and remanded.