Gladys L. PURVIS et vir, Appellants,

v.

Clarence JOHNSON, Appellee.

No. 14678.

Court of Civil Appeals of Texas.

San Antonio.

June 19, 1968.

Rehearing Denied July .17, 1968.

Hope, Henderson, Hohman & Georges, San Antonio, for appellants.

Beckmann, Stanard, Wood & Vance, Melvin A. Krenek, San Antonio, for appellee.

KLINGEMAN, Justice.

Suit for damages by Gladys L. Purvis, joined by her husband, William L. Purvis, against Clarence Johnson for personal injuries allegedly sustained by her in an automobile collision. The parties will be referred to herein as designated in the trial court. The jury found defendant guilty of acts of primary negligence proximately causing the collision. · No acts of negligence were found against plaintiff, but in answer to Special Issue No. 15 inquiring whether plaintiff had sustained a bodily injury as a result of such collision, the jury answered that she did not. Judgment was rendered in accordance with the jury verdict that plaintiff take nothing.

Plaintiff, by her first point of error, asserts that the trial court erred in permitting counsel for the defense on cross-examination of the witness Dr. Warran Ross to exhibit and read to the jury, over objection, a non-authenticated purported written statement by a group of physicians to another group of physicians, attacking the professional and diagnostic ability and integrity of the witness. By her second point, plaintiff contends that the jury's answer to Special Issue No. 15 was contrary to the great weight and preponderance of the evidence, and by her third point asserts that the trial court erred in admitting into evidence hospital records of plaintiff pertaining to previous illnesses, prior injuries, and declarations which were unrelated to and disconnected with any material issue in the case.

Plaintiff was driving home from a baseball game on the evening of September 5, 1966, when her automobile was hit on the left side by an automobile driven by defendant. Plaintiff testified that defendant's automobile was traveling approximately forty miles per hour at such time. Plaintiff was able to drive her automobile home, but that night she was taken to Brooke General Hospital by her husband who was in the military service, where she was examined, X-rayed and discharged that same night. She testified that thereafter her back and left side started hurting her, and that about five days thereafter her left side and left leg became numb. She again went to Brooke General Hospital where she was given further X-rays and some medication for pain. On September 15, 1966, she was examined by Dr. Warran A. Ross, an orthopedic surgeon in Austin, Texas. Plaintiff testified that prior to going to Dr. Ross, she was in constant pain and had reached the stage where she was unable to do her household chores. Dr. Ross continued to treat her up to the time of the trial, a period of approximately eight months. She was given neck braces to wear, medication for pain and muscle spasms, and was advised to use certain rehabilitation exercises. The record discloses that prior to the accident plaintiff worked at intervals as a waitress and as a maid, and plaintiff testified that her earnings when she worked were approximately $40.00 a week. She testified that since the accident she had been unable to do this type of work; that prior to the accident she was able to do all of her household work and since the accident she could not perform heavy tasks connected with such housework; that she suffered pain in her neck, back and left leg. Two of plaintiff's neighbors testified that they had visited in

plaintiff's home on numerous occasions, both prior to and after the accident; that prior to the accident she did all of her household work, and since the accident she had been unable to do certain household tasks, such as ironing, mopping, carrying out garbage, etc., and they helped her with her household work on many occasions since the accident. They testified that prior to the accident they had never heard her complain of pain in her back or neck, but since the accident she constantly complained of pain in her back and neck.

Plaintiff's first point of error relates to error of the court in permitting defendant's counsel on cross-examination of Dr. Ross to read certain excerpts from a purported letter or statement from the "Orthopedic Surgery Section" to the "Tissue Audit Committee" of the Brackenridge Hospital in Austin, Texas, attacking the professional and diagnostic ability of Dr. Ross.

The pertinent portions of the letter objected to are contained in the following:

"Q All right. Are you aware that this statement was made, 'Dr. Ross' remarks regarding diagnostic * * *' I will have to read a little more than that. 'Even though the clinical picture in low back cases is not always clear cut * * *'

"MR. HOPE: Excuse me, Mr. Krenek. Judge, I don't know by what means this letter—from what source we know not. We don't know whether it is authenticated or what. I don't know where it comes from. The proper predicate hasn't been laid. We want to make an objection to any cross examination from some letter or some memorandum that someone else wrote, which hasn't been authenticated in any way, we object to that line of questions. I mean Mr. Krenek could get a letter from anybody or anyplace, any source, at any

time I suppose saying anything. I don't think that is fair to ask the man questions from some letter that someone wrote someone else.

"MR. KRENEK: If the Court please, this bears directly on the Doctor's qualifications and the action by his fellow orthopedic practitioners on the staff of the Brackenridge Hospital. I think I should be allowed to ask him if these were the comments made by the staff in regard to Dr. Ross.

"MR. HOPE: Why don't we bring in the staff, rather than some letter the contents of which we cannot cross examine.

"MR. KRENEK: This is cross examination, if the Court please.

"THE COURT: Overrule the objection.

"MR. Hohman: Note our exception.

"Q (By Mr. Krenek) All right. Doctor, are you aware that this was in the letter, this statement, 'Even though the clinical picture in low back cases is not always clear cut, it was, nevertheless, impressive that Dr. Ross seemed to attach little significance to well recognized patterns of signs and symptoms and how these are related to pathological changes at specific levels and disks in the low back. Since Dr. Ross rarely performs myelograms these patterns should take an added diagnostic importance. Dr. Ross' remarks regarding diagnostic value of such pertinent findings as sensory, reflex, or motor changes were repeatedly vague and very inconsistent at times.' Are you aware that that is part of the letter?

"A If you are reading from that letter, then like I say—in other words, I have to assume that that is what you are reading from, and I have to suppose that that letter was written to who it

was addressed to and it was signed by the doctor who signed it, and find out where he got the information that he concluded these things. You would have to ask him, I don't know.

"Q Do you recognize the signature of Dr. R. A. Dennison of the Orthopedic Surgery Section?

"A I wouldn't recognize—I know him, yes.

"Q More pertinent to this case, Doctor, do you know whether this statement was made in the letter, 'In ten of the twenty-eight patients, or thirty-six per cent, there had been previous evaluation by one, or more commonly, a number of competent physicians, orthopedic surgeons, neurosurgeons and psychiatrists. These previous evaluations were disregarded or not alluded to by Dr. Ross despite the fact that in most cases surgery had been considered either contraindicated or not recommended.' Are you aware of that statement?

"A Like I say, I am not—

"MR. HOHMAN: Just a moment. For the record, we want the record to reflect once again that we are objecting because there has been no proper predicate laid.

"THE COURT: Overruled.

"MR. HOHMAN: No relevance or materiality to this case. Note our exception.

"Q (By Mr. Krenek) Doctor, the following recommendation, are you aware that this was the recommendation of the Orthopedic Section, of which you are a member, 'That Dr. Ross be placed on a status of probation regarding low back surgery for an eighteen month period, during which repeated and consecutive review of all previous and subsequent pertinent cases be performed at

six month intervals. No immediate disciplinary action is recommended.' Aren't you aware that that was the recommendation?

"A Yes. I stated that there have been no restrictions placed upon my practice of medicine. * * *"

■ We are of the opinion that it was error to permit the reading of such excerpts from said letter in the cross-examination of Dr. Ross. The effect of allowing those excerpts to be read was to place before the jury unauthenticated, unsworn, out of court, hearsay statements as to Dr. Ross' professional ability and integrity with no opportunity for plaintiff's counsel to cross-examine the person or persons purportedly making such statements as to their qualifications, whether such statements were made from their own first-hand knowledge, possible bias or prejudice, or other relevant matters. See Atkins v. Graves, 367 S.W.2d 372 (Tex.Civ.App.—Fort Worth 1963, writ ref'd n. r. e.); Texas Indemnity Ins. Co. v. Allison, 31 S.W.2d 319 (Tex.Civ.App.—Waco 1930, writ ref'd); Dalton v. Dalton, 233 S.W. 546 (Tex.Civ.App.—Fort Worth 1921, no writ); Negociacion Agricola Y Ganadera de San Enrique, S. A. v. Love, 220 S.W. 224 (Tex.Civ.App.—Amarillo 1920, no writ).

Dr. Ross testified that he did not recall having received a copy of such letter, he could not recognize the signature on that letter, and he did not state that he regarded such letter as being authoritative. It has been held that allowing counsel to read from a medical book on cross-examination of a medical witness who did not recognize the book as authoritative was reversible error. Cross v. Houston Belt & Terminal Railway Company, 351 S.W.2d 84, 96 A.L. R.2d 1 (Tex.Civ.App.—Houston 1961, writ ref'd n. r. e.); Texas Employers Insurance Ass'n v. Nixon, 328 S.W.2d 809 (Tex.Civ. App.—Houston 1959, writ ref'd n. r. e.).

Having held that the trial court erred in permitting such excerpts from such letter to be read to the jury, it is necessary to decide whether such error was prejudicial error. Rule 434, Texas Rules of Civil Procedure, provides, " * * * no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, * * *."

■ "Whether particular error was 'reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case' is always a judgment call to be made according to the reviewing court's 'opinion' from a review of the entire record in the case. Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191 (1949)." Gomez Leon v. State, 426 S.W.2d 562 (Tex.Sup.1968).

Dr. Ross was the only doctor who testified on the trial. He testified that he first examined the plaintiff Mrs. Gladys L. Purvis approximately ten days after the accident and had treated her about eight months, having seen the patient nine times during that period of time. He testified that as a result of such accident plaintiff sustained an injury to her neck or cervical spine, and his diagnosis in that area was acute and chronic cervical sprain; that she also had an injury to her low back area and he diagnosed it as an acute and chronic lumbar sprain with lumbar disc injury, which injuries were of a permanent nature. He stated that his medical bill up to date of the trial was $229.00, and that plaintiff would require medical care for her injuries for the rest of her life, and that she could reasonably anticipate future medical bills and future medical attention; that her condition was a painful condition and that such condition would continue for the rest of her life; that in his opinion plaintiff could not do domestic work which would require prolonged sweeping, ironing, making beds or activity of that nature which would tend to aggravate her back injury and produce pain.

The only other evidence of a medical nature was excerpts from the medical records of plaintiff at Brooke General Hospital, Fort Sam Houston, Texas, which defendant's counsel, over plaintiff's objection, was allowed to introduce in full. Such medical records covered a period of approximately seven years, and defendant's counsel, over plaintiff's objection, was allowed to read to the jury various entries from those records covering a variety of illnesses, including complaints or treatments for headaches, spots in front of eyes, broken teeth, nervous instability, female problems, abdominal pain, nausea, menstrual flow, chiggers, high blood pressure, low back pain, earache, coughing, etc., and also including two entries which referred specifically to the accident in question, to-wit:

"September 5, 1966: Car hit on left side, left rear tonight. Patient driving. Claims low back pain. No other complaints. Had identical symptoms in June after car wreck. Denies it. Examination: Claims tender every place—underlined—to pain that I touch, including arms, legs, neck, entire back and so forth. Negative straight leg raising. DTRs intact. That is deep tendon reflexes. X-ray lumbosacral spine negative. Prescription Darvon Dewey Harrison, captain, Medical Corps."

"September 14, 1966: Patient is sore over the whole left side of her body as a result of auto accident. Patient wants to make a claim apparently. There is no bone tenderness. Disposition: Aspirin, hextro propoxyphene. Return two weeks."

No medical witness was called by defendant to rebut the testimony of Dr. Ross,

nor did any witness testify that Dr. Ross' testimony was not correct.

█ The erroneous admission of evidence will not require reversal unless the record as a whole affords substantial basis for the reasonable belief that such evidence may well have caused the rendition of an improper verdict and judgment. The basic question is whether it is likely that such evidence may have been a controlling factor in persuading the jury to reach the verdict that it did. Appellate Procedure in Texas, Harmless Error, § 17.12(2).

We have concluded after careful consideration of the entire record that the error in allowing defendant's counsel to read such excerpts from such letter was prejudicial and that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case. See Pittman v. Baladez, 158 Tex. 372, 312 S.W.2d 210 (1958); American General Ins. Co. v. Jones, 152 Tex. 99, 255 S.W.2d 502 (1953); Texas Employers' Ins. Ass'n v. Nixon, 328 S.W.2d 809 (Tex. Civ.App.—Houston 1959, writ ref'd n. r. e.). Such error requires a reversal and remand of the case.

In view of a retrial, plaintiff's point of error complaining that the trial court erred in admitting into evidence hospital records of plaintiff pertaining to previous illnesses, injuries, and declarations which were unrelated to and disconnected with any material issue in this case should be discussed.

Under Art. 3737e Vernon's Ann.Civ. St., hospital records are admissible into evidence as business records if made in the regular course of business by an authorized person who has personal knowledge of the event recorded, once a proper predicate is laid for their introduction, and subject to the other applicable terms and provisions of such statute. It is to be noted that the statute provides that "A memorandum or record of an act, event or condition shall, *insofar as relevant,* be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that: * *." [1] (Emphasis supplied). While there are opinions of some of the Courts of Civil Appeals which give a very liberal construction to the admissibility of hospital records under such statute, our Supreme Court has held that Art. 3737e does not render all such records or entries admissible without limitation. Loper v. Andrews, 404 S.W.2d 300 (Tex.Sup.1966); Skillern & Sons, Inc. v. Rosen, 359 S.W. 2d 298 (Tex.Sup.1962). See also 44 Tex. Law Review 1627; 19 Baylor Law Review 122; Murray, Admissibility of Hospital Records—A Continuing Problem, 29 Tex. Bar Journal 163.

█ While the entire hospital record of plaintiff at Brooke General Hospital covering a period of a number of years was introduced in evidence as an exhibit in the trial court, such exhibit is not contained in the record which was presented to this Court. It is to be noted, however, that the excerpts from such record which were read to the jury and which are contained in the statement of facts include complaints and treatments of such matters as headaches, broken teeth, earaches, chiggers, nervous instability, depression, etc. On a retrial of this cause, if proper objection is made to the introduction of certain hospital or medical records or portions thereof, the trial court in passing on the admissibility thereof, must determine that all necessary elements of the statutory requirements are met and that the admission of such records or portions thereof complies with the guidelines set forth in the applicable holdings of our Supreme Court.

The judgment of the trial court is reversed and the cause remanded.

1. Art. 3737e, Vernon's Ann.Civ.St.