**TEXAS STEEL COMPANY, Appellant,**

v.

**Carl J. RECER, Appellee.**

**No. 17482.**

Court of Civil Appeals of Texas, Fort Worth.

March 15, 1974.

Rehearing Denied April 12, 1974.

Brown, Crowley, Simon & Peebles, and M. Hendricks Brown, Fort Worth, for appellant.

Hooper, Kerry, Chappell & Broiles, and R. David Broiles, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

On or about September 15, 1969, Carl J. Recer, an employee of Pangborn Corporation sustained personal injuries while working in the plant of Texas Steel Company in Fort Worth, Texas. In connection with such work the Pangborn Corporation had manufactured a large steel parts cleaning unit which Texas Steel was in the process of installing in its plant, and Recer (pursuant to contractual agreement between Pangborn and Texas Steel) was present for the purpose of consultation and aid in the installation of the unit. To clar-

ify: Recer, an employee of Pangborn Corporation, was for the benefit of Texas Steel Company on its premises pursuant of a provision of contract between his employer and Texas Steel, owner of the premises. In other words he was an "invitee".

Within the Texas Steel plant there were cranes for the purpose of moving heavy metal from the general directions of north to south, and from south to north. These operated by rolling suspended from overhead trolleys. For the purpose of both their movement and the pick up and deposit of material there was a cab within which an operator was situated to control such.

Most of the unit manufactured by Pangborn was in place, and certain machinery which was a part thereof and located on its top was already installed. There was a "landing" or platform proximate to the machinery intended for purposes of attending installation or repair, etc. of such machinery. The situation of this platform was such that a man of ordinary height standing upon it was squarely in the path of the cab portion of the aforedescribed crane, in the event its movement was either from north to south or from south to north.

At the request of one of the foremen of Texas Steel, Recer had accompanied him in a climb to the top of the Pangborn unit aforementioned for some purpose connected with the machinery on top of the unit. The two men were standing on the platform giving their attention to the machinery when a crane operator (employee of Texas Steel) moved the crane toward either the north or the south. He did not observe Recer or the man with him on the platform. Neither Recer or the man with him observed that the crane was being so moved. As the cab of the crane passed over the platform and machinery aforedescribed the cab struck the upper part of the bodies of Recer and the man with him knocking them over. The cab operator did not know that the event had occurred until he had moved past the men on the plat-

form of the Pangborn unit and was some distance removed. This is mentioned to clarify the fact that extremely heavy machinery was involved.

Recer brought suit in tort against Texas Steel on the theory that the personal injuries he had sustained as the result of being struck by the cab of the crane were proximately caused by its negligence. Trial was to a jury and judgment for damages was rendered based upon the verdict returned. From this judgment Texas Steel appealed.

We affirm.

The acts of negligence found to have been committed by Texas Steel, which was also found to have amounted to a proximate cause of the event culminating in Recer's injuries, were: the failure of the crane operator to keep a proper lookout; the failure of such operator to sound a warning of the approach of the crane upon the place where Recer was standing; the failure of Texas Steel to instruct the crane operator as to appropriate warning measures to be given by the operator to individuals in or near the path of the crane when it is moving; the failure of the crane operator to stop the crane; and the failure of Texas Steel to warn Recer that the crane would be operating in or near the area where he was struck. The jury also found that Recer was in fact injured as result of the occurrence.

Texas Steel contended that Recer was guilty of contributory negligence proximately causing the occurrence and his injuries in consequence. However in its findings the jury refused to find that he was guilty of any act of contributory negligence. The jury also, by its answer in the negative, or "No", found that at the time and upon the occasion in question Recer was not a "borrowed employee" of Texas Steel. Though having found that immediately prior to the occurrence in question Recer was in a position of danger, the jury refused to find that Recer had voluntarily assumed risk of injury in getting into or remaining in such position.

■ Texas Steel requested the submission of a special issue, and objected because of the absence of a special issue, which would inquire of the jury—with the burden of the issue placed upon Recer—whether the occurrence was the result of "unavoidable accident".

According to practice and usage of several years ago it would have been reversible error not to submit such an issue. However, since the decision in Yarborough v. Berner, 467 S.W.2d 188 (Tex.Sup., 1971) this is no longer part of our law. We recently had occasion in Austin Road Company v. Evans, 499 S.W.2d 194, 199 (Fort Worth Civ.App., 1973, writ ref, n. r. e.) to write thereon. Though it is the law that a plaintiff in such character of suit is obliged to prove that the event was not the result of unavoidable accident (as applied to the parties to the suit) that burden is discharged in jury findings upon special issues by which the plaintiff may be said to have discharged such necessarily included burden when he successfully establishes negligence in acts and/or omissions of the defendant and that such amounted to a proximate cause of the event and consequent injury. Here, by the definition of "proximate cause", by the manner of special issue submission, and by the answers returned by the jury plaintiff is deemed to have discharged the burden of establishing that the event was not the result of unavoidable accident.

■ We hold that as a matter of law Recer was an invitee, and that every issue presented to the jury as a fact issue was to be resolved as a matter of fact and not of law; further that each fact finding was raised by evidence of probative force and effect, and that none of the jury findings returned were against the great weight and preponderance of the evidence.

There was evidence of which Texas Steel complains relative to the fact that after the happening of the event it had placed a flashing light underneath the cab of the overhead traveling crane. This

came about as the result of photographs (which were taken and introduced by Recer some time after the occurrence) which showed the presence of such a light having been introduced before the jury without objection, but which were later shown by Texas Steel to have been installed after the event.

■ Although there would be additional reason why no reversible error resulted we are of the opinion that there was support for the admission of the photographs and supplementary evidence which showed the presence of the later installed flashing light. Although reversing in 273 S.W.2d 603 the Supreme Court (1954) (at p. 610) approved the holding of this court upon the admissibility of photographs plus evidence bearing thereupon in explanation of a condition shown thereby different from that existent at time of an accident or occurrence. Driver v. Worth Const. Co., 264 S.W.2d 174, 184 (Fort Worth Civ.App., 1953).

In Driver v. Worth Const. Co., supra, we wrote, as follows: ". . . It appears, however, that the changes were not of a character which might tend to prejudice appellant's (defendant) case theory. It likewise appears that the changes were explained and that the jury, though it had before it the photographs, likewise had explanatory testimony whereby it could consider the photographs in light of the evidence concerning the differences therefrom which actually obtained the night of the fatal accident. Admission of the photographs over objection was a matter of discretion on the part of the court. The court did admit them. Obviously the court must have considered that their admission would aid the jury in considering the evidence and in finding facts based thereon. We believe this was justified and that no abuse of discretion exists. In view of the fact that the pictures were coupled with oral testimony, application of which to the scene portrayed by the pictures in effect operated to change the pictures themselves into other pictures which did effectively portray the actual conditions obtaining at the time which was actually in question, the photographs thereby became admissible. (Citing cases.)"

■ Certainly Texas Steel may, with justification, argue that when after the occurrence of an event remedial or precautionary measures are taken, which, if taken previously would have tended to make the event less likely to occur, evidence of such subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. Texas Steel points out that the language to that effect is found in Rule 51 of "Uniform Rules of Evidence". There is no doubt but that it is a correct statement of a legal principle. However, what if the tender of such character of evidence is not to prove negligence or culpable conduct in connection with the event, or, what if its evidence as such would be merely incidental to another and proper purpose? Where the latter is true, and that is the situation in this case, the matter of admissibility must be left to the sound discretion of the trial court and that discretion not to be interfered with save in an instance where it is abused. Here there was no abuse of discretion.

We reach the matter of Recer's injuries and evidence relative thereto and the findings upon damages. Actually there is no doubt but that Recer did sustain personal injury for which he would be, under the jury findings upon liability, entitled to recover damages. Those injuries not in dispute concern his shoulder and the upper part of his body. Those in dispute concern injury to his spine in the sacral area. Recer may or may not have been aware of that injury immediately following his injury. By the verdict it is obvious that the jury did factually deem such back injury to have been sustained by Recer as the result of the event and occurrence at the premises of Texas Steel Company on September 15, 1969.

By the jury findings the jury stated that Recer's damages were as follows: (1) Expenses for necessary medical, medications, appliances, and hospital care in treatment for his injuries resulting from the occurrence in question: $7,784.88; (2) Expenses for such to be incurred in the future: $2,600.00; (3) Past physical pain and mental anguish: $10,000.00; (4) Future physical pain and mental anguish: $50,000.00; (5) Past loss of earning capacity: $30,000.00; and (6) Future loss of earning capacity: $110,000.00. It is the finding of $30,000 for loss of earning capacity past, the finding of $110,000.00 for future loss of earning capacity, and the finding of $50,000.00 for future physical pain and mental anguish upon which there is the most significant attack.

■ Connected therewith was the admission, over the objection that they were immaterial and irrelevant, of Recer's service records while in the military. The information therein did tend to show the absence of any disability during the course of Recer's service and at the time of his discharge. This was so because Recer had fourteen years of service and because of the absence of any indication by the records that any such had been experienced. For this reason the trial court did not err in deeming the records relevant.

■ Also connected with the complaint on the damage issues were three photographs of Recer's back after the completion of the surgery and medical treatment. These photographs showed scars from the incisions incident to the surgery which had been performed upon his back. They were relevant in that they more clearly indicated to the jury the portion of the back contended to be the site of the injury because of which suit was brought. They were not unsightly though no part of Recer's case is for disfigurement. Nothing in the photographs could be considered inflammatory. Admission of the photographs was proper.

In the hospital records introduced, incident to the reports contained therein by the doctors, were several notations on "history" which stated circumstances relative to the accident pursuant to which Recer claims to have sustained the injury to his back, and which further stated that Recer gave the history of having sustained the injury to his back at Texas Steel. Texas Steel contends by points of error that such portions of the records and reports were improperly admitted into evidence because they constituted hearsay statements upon disputed fact issues as to where and how Recer came to have his back injury, and the cause thereof.

To clarify: there was no question but that Recer sustained an injury on September 15, 1969. There was a fact issue upon trial about whether the injury caused the condition of Recer's back. The condition was undoubtedly existent on September 27, 1969, when Recer was admitted to the hospital and was operated upon for his back trouble. The condition found existent was an extruded spinal disc at the interspace between lumbar spinal process number 4 (or L 4) and lumbar spinal process number 5 (or L 5).

■ Actually Recer was to be found calling on a physician because of his back trouble on September 24, 1969, nine days after the injury of September 15, 1969. He at that time visited Dr. Raymond Kahn in Tarentum, Pennsylvania, complaining of pain in his lower back and right hip and leg. The doctor's report was admitted into evidence. The doctor's deposition, later taken, was also made part of the record. On the matter of Recer having been injured on September 15th there is no dispute, the dispute being whether or not such injury caused the condition which occasioned his call upon Dr. Kahn on September 24th. There is no actual dispute about when Recer claimed to have experienced trouble with his back, at least to the extent that he sought medical attention. That date was September 24th. Therefore the language in Dr. Kahn's report stating that Recer claimed to have been injured September 15th, and that he stated on Sep-

tember 24th that he was experiencing pain in his lower back and right hip and leg did not present evidence upon any actual disputed fact issue. This is so because the report admitted over objection on the ground that it constituted hearsay does not purport to be evidence proving that the injury of September 15th was the cause of the condition of which complaint was made to Dr. Kahn on September 24th.

■ After having seen Dr. Kahn in Pennsylvania Recer went to Memphis, Tennessee and called on Dr. Howser on September 25th or 26th. He was admitted to the hospital in Memphis on September 27th, where he was operated upon for his back condition. In operating the doctor performed what is called a laminectomy of the L 4 disc (or the disc between the lumbar vertebrae numbers 4 and 5).

Pursuant to the operation Dr. Howser called into consultation a Dr. Boals, also of Memphis. Dr. Boals also treated or directed treatment relative to Recer's upper extremity. With regard to the condition of the back for the correction of which Dr. Howser performed an operation he appears as consultant merely. (It might here be noted that after Dr. Howser had twice operated upon Recer's back Dr. Boals then operated upon the back at the same place and performed what is termed a "spinal fusion".) Anyway, Dr. Boals' report on this consultation, made a part of the hospital records at Memphis, states the circumstance of Recer's injury on September 15, 1969, and continues "Since then he has had low back pain with right leg pain, severe, with numbness of the toes and dorsum right foot. Has had back pain before, but no leg pain or history of any back injury. . . . " (This record was signed by Dr. Howser, which fact is immaterial to our discussion and holding.)

The report of Dr. Boals, as a part of the hospital records, was received into evidence over the objection that it constituted hearsay evidence purporting to prove that ever since the injury sustained on Septem-

ber 15, 1969 and up until the time Recer first began to complain of back trouble (undisputed from September 24th when he saw Dr. Kahn) he was experiencing pain from injury to his back caused by the occurrence of September 15th.

The report of Dr. Boals of which complaint is made was a part of the hospital records which were introduced under Vernon's Ann.Tex.Civ.St. Art. 3737e, "Memorandum or record of act, event or condition; . . . . " In Skillern & Sons, Inc. v. Rosen, 359 S.W.2d 298 (Tex.Sup., 1962) the Supreme Court, acknowledging the authority of Art. 3737e in respect to the reception of hospital records generally, held that such authority did not extend to the statement made thereon relative to Mrs. Rosen, viz.: " 'The patient slipped and fell at 5:30 p. m. while walking in the slushy snow in front of a local drugstore.' " The reason why, said the Supreme Court, was because of the statutory provision that those admissible portions of hospital records must have been made by the hospital's employee or representative, in the regular course of its business, upon such agent's personal knowledge of such act, event or condition. It is of interest to note that the court, though holding the entry inadmissible by Art. 3737e, nevertheless declared that it was receivable as an admission against interest on the part of Mrs. Rosen. Her contention was that she had fallen inside the store of Skillern & Sons.

Had the evidence in question in the instant case been tendered for a limited purpose, such as for the purpose of showing the occasion upon which Recer first claimed to a physician that his back trouble was the result of the occurrence on September 15, 1969, there would be no question of its admissibility. However the tender of the evidence was unrestricted, or for all purposes.

We are of the opinion that by Skillern & Sons, Inc. v. Rosen, supra, the court erred in admitting the testimony. We speak relative to the statement attributed to Dr. Boals—that since the occurrence of Sep-

tember 15th, 1969 Recer had experienced low back pain, etc. Nevertheless we believe that the complaint of Texas Steel should be overruled by provisions of Texas Rules of Civil Procedure, rule 434, the "harmless error" Rule. We find ourselves in agreement with the statement in Purvis v. Johnson, 430 S.W.2d 226, 231 (San Antonio Civ.App., 1968, no writ hist.), as follows: "The erroneous admission of evidence will not require reversal unless the record as a whole affords subtsantial basis for the reasonable belief that such evidence may well have caused the rendition of an improper verdict and judgment. The basic question is whether it is likely that such evidence may have been a controlling factor in persuading the jury to reach the verdict that it did. Appellate Procedure in Texas, Harmless Error, § 17.12 (2)."

From the above we have considered the complaint of Texas Steel primarily in its relation to the liability aspect of the case. Its complaint also embraces the medical aspect, and the damages found by the jury to have been a proximate result of the injuries sustained by Recer on September 15, 1969. Considered anew in that light we have reached the same conclusion, i. e. there was not reversible error.

The opinions of every medical expert who testified were based upon hypothetical questions which did not necessarily depend upon the authenticity of the "history" as related to Dr. Boals. Furthermore Texas Steel was afforded opportunity to cross-examine not only Dr. Boals, but also Drs. Howser and Kahn, and such opportunity was apparently afforded after Texas Steel was on notice that Recer intended to introduce into evidence the portions of the hospital records of which complaint is made.

In discharging the burden of proof Recer endeavored to develop his case on damages, as applied to future disability because thereof, in a manner somewhat novel to personal injury litigation. Rather than to merely content himself by proving disability and attendant damages in the time prior to the trial and with a minimum of testimony opening up the matter of such likely to be experienced in the future, he proceeded to offer evidence exhibiting the kind and character of work he thought he could perform in the future, with further and additional evidence concerning his reasonable expectation of ability to earn money thereby and the amount he should be able to earn. With proof thereof, coupled with proof concerning what he would have earned if he were able to continue the same character of employment in which he was engaged at time of his injury on September 15, 1969, he sought to show with substantial exactitude the amount of his diminished earning capacity in the future.

Generally, it would be expected that it would be a defendant who would endeavor to show an ability on the part of the claimant to work and earn money in the future, what should be earned if claimant would only apply himself, etc. It was, of course, entirely proper for Recer to make this a part of his proof though the evidence might reduce the outer limits of what the jury might return as its finding upon future damages based upon loss of earning capacity. Principally, as we see it, his tender of such evidence would be to show that he desired to be fair in his contentions upon physical disability, etc. From the record before us it is apparent that the jury was impressed by such evidence. The jury returned findings rather close to the amount established by such evidence. Texas Steel deems itself aggrieved. Texas Steel contends that most of such evidence was improperly placed before the jury, and that its prejudicial effect was apparent by the findings of the jury in accord therewith.

We will first consider the evidence elicited from the psychologist by whom Recer was tested as to mental and physical efficiency, motivation, etc., in a determination of what character of work he could and should attempt in the future, the monetary rewards to be expected therefrom, etc.

We may and will take judicial notice that a modern-day practice of industry and commerce is to seek the services of psychologists (expert or not) as a part of the screening process in selecting employees from among those who offer their services. In 1969 the State of Texas (by Acts 1969, 61st Legislature, p. 2059, Ch. 713) provided for the certification and licensing of psychologists to practice in Texas by its Texas State Board of Examiners of Psychologists, a body created by the Act. See V.A.T.S., Art. 4512c, "Certification and licensing psychologists".

A man so certified and licensed was Dr. Curtis J. Firkins. He was an expert witness who testified relative to Recer. He had, as a part of his qualifications as an expert, approximately 25 years experience in the field of vocational disability determination. Not long before trial date he had spent approximately a day and a half with Recer, giving certain tests which were described, talking with him, etc., and formulating the opinion he proposed to give as an expert.

Recer had begun to take a course in drafting and was, by testimony from another witness, shown to be progressing satisfactorily in the school he was attending. From such witness there had been elicited testimony as to the amount Recer should be able to make after he qualified to work as a draftsman. Based upon a hypothetical question propounded to Dr. Firkins, which had been no doubt prepared with his aid, Recer's attorney elicited from him the opinion, as an expert, that Recer would be able to substantially perform the tasks of a workman who was a draftsman, as work he could do most fruitfully by way of an occupation in the future.

Texas Steel vigorously objected to the reception of Dr. Firkins' testimony on the ground that it invaded the province of the jury to determine the future disability of Mr. Recer.

Following the reception of Dr. Firkins' testimony Recer offered the testimony of a Dr. Floyd Durham, Professor of Economics at Texas Christian University. He testified that his specialty was income, employment and labor, and stated that he was qualified to make determinations of lost income and diminished earning capacity.

By so testifying, certainly if the trial court deemed the evidence such as to make of the subject matter one wherein the character of evidence tendered would be "expert" testimony, the proffered evidence would be admissible. The weight to be given it as evidence would be for the jury.

Dr. Durham was asked what would amount to a series of hypothetical questions based upon earlier testimony concerning Recer's anticipatory earnings (had he been able to continue in that same character of employment in which he was engaged on September 15, 1969) and also based upon anticipatory income from his intended future work as a draftsman. Additionally a similar hypothetical question posed inquiry upon projected (by economics) earnings of Recer as a millwright, an occupation in which he had once been engaged but in the performance of which he claimed he would be in the future hampered in performing due to his disability.

In replying to the hypothetical question(s) Dr. Durham assumed (his own independent testimony having shown the fact) that Recer's expense account and automobile furnished pursuant to his past employment comprised part of his remuneration—or was a benefit from employment—in addition to the salary paid. In giving his answer, or answers, Dr. Durham made what would amount to mathematical calculation of loss of earnings or calculation as to lost earning capacity in the past. Mathematical calculation was made upon the loss of earning capacity during the three periods when Recer was unable to work because of time in the hospital for operations, plus the recuperative period thereafter entailed until able to return to work, and plus the period from November, 1970 (when he ceased to work at what had been his former employment by Pangborn

Corporation) until time of the trial. Additionally, the witness testified to mathematical amounts projected by economics as indicated by the hypothetical question referred to in the paragraph immediately preceding.

A convenient summary of Dr. Durham's testimony was provided by Recer in his brief, as follows:

### DIMINISHED EARNING CAPACITY

#### Past

| | |
|---|---|
| Lost Earning Capacity for September 25, 1969 through November 3, 1969 | $ 1,453.84 |
| Lost Earning Capacity for August 3, 1970 through September 15, 1970 | $ 2,180.00 |
| Lost Earning Capacity from November, 1970 through December 31, 1970 | $ 1,537.50 |
| Lost Earning Capacity from January, 1971 through December, 1971 | $ 12,300.00 |
| Lost Earning Capacity from January, 1972 through December, 1972 | $ 12,300.00 |
| Lost Earning Capacity from January, 1973 through April 30, 1973 | $ 4,350.00 |
| Total Lost Earning Capacity in Past | $ 30,487.50 |

#### Future

| | |
|---|---|
| A. Earning Capacity as Erecting Engineer from May 1, 1973 to April 1, 1992 (retirement date) | $331,932.00 |
| Earning Capacity as Draftsman from May 1, 1973 to April 1, 1992 | −$132,735.00 |
| Difference in Earning Capacity of Erecting Engineer and Draftsman | $199,197.00 |
| Diminished Earning Capacity in future as Draftsman as opposed to Erecting Engineer ($199,197.00), discounted to present value, invested at 5½% | $112,327.00 |
| B. Earning Capacity as Millwright from May 1, 1973 to April 1, 1992 | $383,747.00 |
| Earning Capacity as Draftsman from May 1, 1973 to April 1, 1992 | −$132,735.00 |
| Difference in Earning Capacity of Draftsman and Millwright | $251,012.00 |
| Diminished Earning Capacity in future as Draftsman as opposed to Millwright, discounted to present value invested at 5½% | $141,545.00 |

■ Texas Steel vigorously objected to the reception of Dr. Durham's testimony on the ground that it invaded the province of the jury to determine the damages sustained by Recer (other than pain and suffering and medical expenses).

The same character of contention opposed the propriety of argument upon the *per diem* measure of pain and suffering in a personal injury case in Continental Bus System, Inc. v. Toombs, 325 S.W.2d 153, 164 (Fort Worth Civ.App., 1959, writ ref., n.r.e.). The holding of the propriety of such argument is now recognized by Texas law.

■ The question of whether the witnesses were indeed experts has given us some trouble. Our conclusion, however, it that the trial court was entitled to treat them as such and to receive their evidence as expert testimony. That such was within the province and discretion of the court in a case where the witnesses tendered testified as experts in the field of diving safety was one of the holdings of this court in Urquhart v. Barnes, 335 S.W.2d 666, 669 (Fort Worth Civ.App., 1960, no writ hist.). The same holding would be proper concerning the testimony here. There was not an abuse of discretion on the part of the trial court in admitting such as evidence by experts, and in treating their testimony as "expert".

There is no question but that the evidence was not absolutely necessary or essential to be proved as a part of Recer's case. As already noticed he merely chose to offer such in going further than the law required to establish his damages with definiteness and certainty. See text on background and related matters in the forepart of 60 A.L.R.2d, p. 1347, Annotation: "Per diem or similar mathematical basis for fixing damages for pain and suffering"; 22 Am.Jur.2d 44, "Damages", Sec. 25, "As to amount"; 32 C.J.S., "Evidence" § 446, p. 62, "Invasion of Province of Court or Jury in General", Sub. b., "Skilled or Expert Witnesses", and following on the same subject at p. 70, Sec. 447(2), "——— Admission of Opinion Evidence". In McCormick on Damages, p. 109, "The Problem of Proof", is stated under Sec. 29, as follows: " 'Estimates' or 'opinions' as to the profits that would have been made, that is, the amount of the lost profits,

stand on a different footing. If concrete data, such as the past profits of the same or other businesses, are furnished by the proof, then a witness having special experience in the field, may be allowed to interpret the data by giving his opinion therefrom as to the probable profits that would have been made. But, if no such data are available, or if the witness has no special skill or knowledge, his opinion does not lessen the uncertainty of the inference, and it is inadmissible." The text writer might well have stated the last sentence conversely, that if the witness has special skill or knowledge so that his opinion would lessen the uncertainty of the inference it would be admissible.

On pages 302 to 306 in McCormick's book is stated the development of use of life expectancy tables, now universally acknowledged to be proper to be introduced. On page 306, "Personal Injuries", under Sec. 86, "Impairment of Future Earning Capacity", it is stated: "This expression of attitude on the part of the court raises fundamental questions of policy about our haphazard methods of assessing compensation in actions for personal injuries. Admittedly, the practice of isolated awards by juries, inexperienced in such matters, and having no accurate knowledge of results in other similar cases, is intuitional and unscientific. . . . It is suggested that the courts should shift from the present extreme emphasis upon caution in the use of the tables (under discussion was material collected upon life expectancy and upon present value of future income) to a willingness for actuarial witnesses in their testimony and counsel in argument to develop the application of these statistical methods of measuring economic values of human life and limb to their full limits of usefulness."

We need not go so far as to make recommendation like unto that of Professor McCormick. We need only pass upon the propriety of admitting the testimony of Dr. Firkins and Dr. Durham. We hold same to have been admissible within the discretionary power of the court, which discretion was not abused by admitting the testimony.

Texas Steel complains because of the $2,600.00 finding of the jury as future medical and hospital expenses to be incurred. Admitting that there was some testimony concerning the need for future expenses of such nature, Texas Steel contends that the size of the figure is purely speculative and not based upon any testimony concerning any reasonable probability. At the time of trial, as was shown, Recer's life expectancy was 26.2 years. Thus, by resort to the medical evidence it is obvious that the jury allowed him $100.-00 per year, or an amount which would contemplate such expenditure when averaged over 26.2 years.

Here we have a case where there would be no doubt that future expenses will, in all reasonable probability, be necessary. Furthermore, where there is not doubt as to the character of medical attention to be entailed. The only guide to amount is the very high ($7,784.88) amount expended since September 15, 1969, and to the time of trial; but this involved over $7,000.00 in expense attendant to three operations on Recer's back. While not shown to be necessary, but a possibility merely , was medical evidence that an operation in the future might become a necessity. A more likely possibility would be that Recer might be required to undergo therapy, perhaps in a hospital. A probability is that Recer will find it necessary to resort to medication and drugs, charges for which would be along the lines of previous drug charges. Previous medications and drugs amounted to $151.55.

Within the limitation that the award in the respect considered be not excessive, the jury should be entitled to exercise its common sense and general knowledge in its determination of future medical expenses which likely will be required. Here we do not deem the amount of the award to be excessive. The application of

the jury's common sense and general knowledge was called into operation because it was entitled to believe that the condition of injury and infirmity shown as existent was such that medical, etc., attention would in reasonable probability be required;—that it having been shown that Recer did not hesitate to resort thereto when such was needed in the past the presumption followed that he would not hesitate to do so again,—that since there had been expense involved in the medical, etc., attention obtained in the past,—that it followed that there would be expense attached to Recer's resort thereto in the future. Lieske v. Natsuhara, 165 Wash. 270, 5 P.2d 307 (1931). The rule of requisite certainty in proof consistent with the practicality of its production was sufficiently satisfied in this instance.

Texas Steel presents a point of error contending that if no one error be sufficient in itself to evidence reversible error nevertheless the cumulative effect of the errors involved was sufficient to exhibit reversible error in the verdict and judgment. Since we have found only that there was error in the admission for general purposes (and not for the restricted purpose whereby it was admissible) that portion in the history given by Dr. Boals' report which stated that Recer's back pain began immediately after he sustained injuries on September 15, 1969, and since we have held that in light of the entire record such did not amount to reversible error, there obviously could be no cumulative error in the case.

■ Remaining as a matter of complaint is the contention of Texas Steel that the findings upon damages were excessive and against the great weight and preponderance of the whole of the evidence in the case. This complaint we overrule. Rarely have we seen more meticulous proof to establish the items of damage to be expected in the future (save for the item upon reasonable medical expense to be expected in the future) and such proof fully supports the damages found. The damages which

had accrued prior to the time of the trial were adequately established by the evidence, and there has been minimal difficulty in determining the propriety of the findings relative thereto. There was no complaint of jury argument. There is nothing in the record indicative of any passion, prejudice or other improper motive on the part of the jury in its assessment of damages; rather does the record reflect that the jury carefully followed the evidence produced before it and dispassionately arrived at the several amounts found for the guidance of the court in rendering judgment.

Judgment is affirmed.

LANGDON, J., not participating.

ON MOTION FOR REHEARING

On rehearing Texas Steel finds fault with our failure to discuss its points of error insisting that the overhead traveling crane and its cab was so open and obvious to Recer and patently constituted a dangerous condition to him, as a person in the path of the cab and crane, that it owed no duty to warn Recer and owed no duty with respect to the other instances of negligence found. Texas Steel contends that the court should have disregarded the findings upon such issues, all of which were submitted to the jury over its objection.

In the opinion we noted that the jury, in connection with Texas Steel's issues under its pleaded defense of *volenti non fit injuria,* refused to find that Recer voluntarily assumed risk of injury in getting into and remaining in the position of danger where he sustained his injuries as result of being struck by the cab of the crane. The issues bore upon the pleaded defense mentioned and not directly upon the concept of "no duty", as to which Recer was required to carry the burden of proof.

Adam Dante Corporation v. Sharpe, 483 S.W.2d 452, 458, (Tex.Sup., 1972) is the latest of the cases by the Supreme Court upon the theories of "no duty" and *"volen-*

*ti*" in suits for damages by a plaintiff "invitee" (as Recer) against the owner/operator of premises where plaintiff was allegedly injured. Justice Pope, author of the opinion, goes so far as to indicate his thoughts relative to the proper submission of special issues in such a case. The case discussed was one where "no duty" and *"volenti"* went "hand in hand". The same is true in the case presently before us. Here the trial court "tracked" the special issue submission indicated by *Adam Dante*. The trial court, deeming both theories to have been raised by pleadings and finding (as was within the province of the court) that they were raised by the evidence, submitted the special issues indicated by Justice Pope.

 On "no duty": By *Adam Dante* Recer was *not* required to obtain a jury finding that he did not actually know and did not appreciate the danger, but he was merely required to present evidence making a *prima facie* case to that effect. By his proof of a *prima facie* case on "no duty" a character of obligation was cast upon Texas Steel to "go forward with the evidence" upon its affirmative defense of *"volenti"*. On such affirmative defense Texas Steel was required to seek (under its evidence) the submission of special issue inquiry to the jury (with the burden thereof cast upon it) inquiring whether Recer had voluntarily assumed the risk of injury. This was the manner by which the case was submitted to the jury and no attack is made upon the mode of framing the court's charge on these theories.

Thus, primarily, the contention of Texas Steel is that there was no evidence whereby Recer might be said to have discharged his burden of proof upon "no duty". Secondarily, its contention is that the trial court's necessarily implied finding that such burden was discharged was contrary to the greater weight and preponderance of the evidence by the whole record.

On this we hold that there was sufficient evidence of probative force by

which the trial court correctly treated Recer's duty as discharged; and that the necessarily implied finding by the court that the burden was discharged was not against the greater weight and preponderance of the evidence. We again note that we have held that the jury's negative finding, or refusal to find, that Recer voluntarily assumed risk of injury—Texas Steel's defensive issue—was not contrary to the greater weight and preponderance of the evidence.

The motion for rehearing is overruled.